438 P.2d 407

William J. DART and Dorothy Dart, Appellants,

v.

WESTERN SAVINGS & LOAN ASSOCIATION, an Arizona corporation, Appellee.

William J. DART and Dorothy Dart, Appellants,

v.

INLAND WESTERN MORTGAGE COMPANY, an Arizona corporation, Appellee.

Nos. 8583, 8631.

Supreme Court of Arizona.

In Banc.

March 7, 1968.

Alan Philip Bayham, and Jerome S. Gutkin, Phoenix, for appellants.

Kramer, Roche, Burch & Streich, Phoenix, for appellee Western Savings & Loan Assn.

Snell & Wilmer, Phoenix, for appellee Inland Western Mortgage Co.

STRUCKMEYER, Justice.

These two appeals, consolidated for this decision only, arise out of an action to foreclose a mortgage on a trailer park. Dart and his wife, together with Inland Western Mortgage Company, second mortgagee,

were sued by Western Savings and Loan Association to foreclose a first mortgage. Western also sought the appointment of a receiver. Inland cross-claimed to foreclose its second mortgage and to foreclose a first mortgage on the Darts' home. It also sought a receiver.

William J. Dart, in answer to the complaint for foreclosure by Western, asserted that he was the beneficiary of a trust whose res was the subject matter of the foreclosure suit and he cross-claimed against Union Title Company, as trustee, alleging conversion of trust moneys (income from the trailer park deposited in escrow) so that the trust res was jeopardized. Union answered the cross-claim, admitting that it had converted trust moneys and stated there was an arrearage of $18,500 on the first mortgage. It further alleged that the Darts had, in March, 1964, unlawfully assumed the management and control of the trust estate. Union also urged the appointment of a receiver.

At the time of the hearing on the application by Western for a receiver, the property was of the estimated value between $500,000 and $800,000, and $244,478.69 was owed on the first mortgage and $55,000 on the second mortgage. A federal tax lien had been placed against the property in the approximate amount of $187,000. It is conceded, however, that this tax lien is junior to both mortgages. Real and personal property taxes are accruing against the trailer park at the rate of $1700 a year and interest on the first mortgage is accruing at the rate of $1600 a month.

William J. Dart, the residuary beneficiary of the trust, and his wife Dorothy entered into possession of the real property after it became known that Union had embezzled the trailer park income. Thereafter, they collected rentals at the rate of approximately $5,000 a month. Although some of the income was used by the Darts to improve the trailer court, none was applied to meet the payments due on either the first or second mortgages.

The Inland mortgage provides for an assignment of rents and profits as security for the mortgage. In addition, both mortgages provide that if an action to foreclose is brought, a receiver "shall be appointed" to take charge of the property and to receive and collect rents, issues and profits and apply them to the payment of the mortgages, taxes and other charges. The court, acting upon the above stated facts, did appoint receivers, first at the instigation of Western and later at the instigation of Inland. The appeals question the propriety of the trial court's actions in that respect.

It is clear that the appointments of the receivers were improvident.

A.R.S. § 33–703, subsec. A provides:

"A mortgage is a lien upon everything that would pass by a grant of the property, but does not entitle the mortgagee to possession of the property unless authorized by the express terms of the mortgage. * * *"

Of this section, we have said:

"The title to mortgaged property under our law remains in the mortgagor. The mortgagee's interest is that of a lienor." Mortgage Investment Co. of El Paso, Tex. v. Taylor, 49 Ariz. 558, 563, 68 P.2d 340, 342.

The principle applicable here has been discussed in 2 Glenn on Mortgages, § 173:

"The mortgagee's equitable right to have a receiver, therefore, arises only when he shows something more than a default; * * *. Such, at least, is the prevailing rule with which we are now dealing; and so it remains to ask what is the 'something more' that is required.

"The first point on which all are agreed, is that there should be no receivership if the security is adequate and no waste is threatened which is apt to impair the mortgagee's safety."

The reason for the rule that a mortgagee is not entitled to a receiver if the security is adequate and no waste is threatened is that, the mortgage being but a lien, the mortgagor is entitled to possession and

to all the benefits, such as the income, which the possessor of property ordinarily enjoys. United States Trust Co. of New York v. Wabash Western R. Co., 150 U.S. 287, 14 S.Ct. 86, 37 L.Ed. 1085. Possession continues on foreclosure until the period of redemption expires. For cases adhering to the rule that if the security is adequate to meet the mortgage a receiver will not be appointed to take charge of the property, see Garden Homes, Inc. v. United States, 1 Cir., 200 F.2d 299; Parker v. Williams, 230 Ala. 437, 161 So. 512; Taylor v. Hoffman, 229 Ala. 420, 157 So. 851; 82 A.L.R.2d 1075n; Planters Oil Mill v. Carter, 140 Ga. 808, 79 S.E. 1120; Cross v. Will County Nat. Bank, 177 Ill. 33, 52 N.E. 322; Strauss v. Georgian Building Corp., 261 Ill.App. 284; Leader Pub. Co. v. Grant Trust & Savings Co., 182 Ind. 651, 108 N.E. 121; Aetna Life Ins. Co. v. Broecker, 166 Ind. 576, 77 N.E. 1092; Parker v. Coe, 200 Iowa 862, 205 N. W. 505; 7 A.L.R.2d 796n; Des Moines Joint Stock Land Bank of Des Moines v. Danson, 206 Iowa 897, 220 N.W. 102, 221 N.W. 542; First Nat. Bank of Gladbrook v. Witte, 216 Iowa 17, 245 N.W. 762; Broad and Market Nat. Bank of Newark v. Larsen, 88 N.J.Eq. 245, 102 A. 265; Mann v. Whitely, 36 N.M. 1, 6 P.2d 468; Monroe County Sav. Bank v. Bray, 147 Misc. 767, 265 N.Y.S. 869; 111 A.L.R. 732n; Argall v. Pitts, 78 N.Y. 239; Astor v. Turner, 11 Paige (N.Y.) 436. Insolvency of the mortgagor is a factor for consideration only if the security is inadequate so that the satisfaction of a deficiency judgment is unlikely.

The evidence introduced at the hearing on the application by Western for a receiver makes it abundantly clear that the security is adequate. According to the uncontradicted statement of counsel for the Darts to the court at the hearing for the appointment of a receiver, the property is appraised at between $550,000 and $780,000. The attorney for Western made this statement to the court:

"At this particular time it's obvious to Counsel here that the property at the present time, under the way in which it's being managed is probably not jeopardizing our particular loan in the amount of 250 some odd thousand dollars. * * *"

And:

"As to the receivership at the present time, I think Mr. Bayham has made his point that the property is not in jeopardy at the present time as to our security."

It is, however, Western's position that because its mortgage provides a pledge of the rents and profits and an agreement for the appointment of a receiver that the court acted properly and within its discretion. Here again appellee's position runs counter to the weight of reason.

"We have seen that a receiver will not be appointed when the security is adequate and there is no danger of waste. The reason, of course, is that when the mortgagee does not stand in need of this interim measure an equity court will not deprive the mortgagor of the possession to which he is absolutely entitled under the lien theory; * * *. The question now is, whether the income and receivership clauses can overcome this rule. To say yes, would mean that although an equity court would properly refuse to thrust a mortgagee into possession when there is no necessity for it, yet the court should do that very thing if the mortgage so provides.

"The answer is that no such contract provision should force a court of equity to exercise its discretion in favor of a party who stands in no need of aid. * * * If the security is plainly adequate, a receiver will not be appointed, despite the presence, in the mortgage, of a rent pledge or receivership clause, or both." 2 Glenn, Mortgages, § 175.1.

 It is urged that the failure to pay taxes constitutes waste. But while it is true that taxes are accruing at the rate of $1700 a year, there is no evidence whatsoever that there has been a failure to pay taxes. And finally, Western suggests that the accrual of interest at the rate of $1600 a month is

grounds for a receiver. We do not think so. Here again there is no showing that the security is insufficient to provide recoupment of interest.

 The record is clear. The Union Title Company, as trustee, converted income from the property which if applied to the mortgages would have been sufficient to prevent them from being in default. Upon the failure of Union Title to make the mortgage payments, and it appearing that the property was being mismanaged by being permitted to fall into disrepair, appellant Dart, the residuary beneficiary of the trust, entered into possession. The testimony discloses, from Western's witness, Glenn Erickson, that when he first checked the property it was "badly run down. The recreation facilities were not operating. The pool was not operating, and it showed neglect throughout and they had quite a few vacancies out there." This was the condition of the property under the management of Union Title shortly before July 3, 1964. Thereafter, under the appellants' management and by September 3rd, the date of the receivership hearing, Erickson found "all the facilities operating nicely. The landscaping is well taken care of. It's neat and there seems—I talked to several people and there is lots of harmony out there now, and I would say it was running in first class condition right now" with "very few" vacancies.

We think it was within the prerogative of the residuary beneficiary to attempt to save the trust res and that he had sufficient equitable interest to enter upon the property for that purpose under the peculiar circumstances of this case. The operative facts which would empower the court below to appoint a receiver to take charge of the property were not present. It should have directed either that Union Title be immediately superseded as trustee and that the successor trustee take charge of the property, applying the income in accordance with the trust agreement; or, if it determined that appellant had been properly managing the property, it should have placed him in possession, under bond, to preserve the property with directions to distribute the income in accordance with the trust agreement. See, e. g., the disposition of the court in Quitman v. Dowd, 301 Ill.App. 403, 23 N.E.2d 207. Irrespective, the lower court must direct that the net income of the trust property, both past and future, be distributed pursuant to the terms of the trust agreement.

The orders appointing the receivers are set aside and vacated and the cause is remanded for further proceedings consistent with this decision.

McFARLAND, C. J., UDALL, V. C. J., and BERNSTEIN and LOCKWOOD, JJ., concur.