In re CORNER POCKETS OF THE SOUTHWEST, INC., d/b/a Corner Pocket, Doc & Eddy's, Corner Pockets of the Southwest Ltd. Partnership, FF & N, Inc., Debtor.

Bankruptcy No. 87–40651.

United States Bankruptcy Court, D. Montana.

May 4, 1988.

Harry D. Dixon, Jr., Jeffrey T. Wegner, Dixon & Dixon P.C., Omaha, Neb., Phillip R. Oliver, Billings, Mont., for debtor.

Neal G. Jensen, Great Falls, Mont., for Chase Bank.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 11 case, Chase Bank of Arizona, a secured creditor, filed a motion for relief from the automatic stay on February 1, 1988, together with objections to use of cash collateral and request for Order prohibiting use of cash collateral. A companion motion to change venue of the case was also filed on the same date.[1] The Clerk failed to schedule a preliminary hearing on the motion for relief from stay within thirty (30) days of February 1, 1988, as required by the practice of this Court. A telephone conference call was held by the Court and counsel for the respective parties on March 14, 1988, which resulted in a scheduled hearing on the motion for March 29, 1988. The parties agreed to vacating such hearing, and stipulated to submission of the issues by briefs. The Debtor was duly served with a copy of the motion for relief from stay on February 1, 1988, by the creditor's counsel, but the Debtor has never made a request for hearing on the motion within thirty (30) days of February 1, 1988. The creditor also failed to request a hearing on the motions, thus setting the trap for Debtor. The creditor now contends, and the Debtor vigorously objects, that the stay terminated upon expiration of thirty (30) days from the date the motion was filed pursuant to Section 362(e) of the Code. The creditor relies upon case authorities of *In re Skaneateles Bowling Center, Inc.,* 5 B.R. 479, 2 C.B.C.2d 541 (N.D.N.Y. 1980); *In re Wood,* 33 B.R. 320, 9 C.B.C.2d 493 (Bankr.Ida.1983); and *In re Marine Power & Equipment Co., Inc.,* 71 B.R. 925 (W.D. Wash.1987). The Debtor counters with case authorities such as *In re Clark,* 69 B.R. 885 (Bankr. E.D.Pa.1987) and *In re Small,* 38 B.R. 143 (Bankr.Md. 1984), which basically hold that the thirty (30) day rule may not be invoked where the creditor fails to take action to submit the motion for hearing.

I feel the better reasoned authority, based on the clear language of § 362(e), is

---

1. That motion was duly scheduled for hearing by the clerk for February 23, 1988, together with a response to the motion filed by the Debtor on February 16, 1988.

contained in the two Circuit Court opinions of *In re River Hills Apartments Fund,* 813 F.2d 702 (5th Cir.1987) and *In re Looney,* 823 F.2d 788 (4th Cir.1987). *Looney* holds:

"... The district court interpreted both § 102 and the language of § 362(e) to allow the bankruptcy court to continue the stay pending disposition of a motion for relief from the stay.

However, the bankruptcy court took its action without affording any notice whatsoever to Grundy. While § 102, read in conjunction with § 362(e), does not require actual preliminary hearings in all cases when a bankruptcy court continues the automatic stay in the face of a motion for relief from the stay, it requires at a minimum that notice be given to the parties before taking such action, to allow them, for example, to request an actual hearing.

\* \* \* \* \* \*

Section 362(e) was enacted to prevent the practice under the old Bankruptcy Act of 'injunction by continuance.' The legislative history is clear on this point:

'Subsection (e) provides protection that is not always available under present law. The subsection sets a time certain within which the bankruptcy court must rule on the adequacy of protection provided for the secured creditor's interest. If the court does not rule within 30 days from a request by motion for relief from the stay, the stay is automatically terminated with respect to the property in question. To accomodate more complex cases, the subsection permits the court to make a preliminary ruling after a preliminary hearing. After a preliminary hearing, the court may continue the stay only if there is a reasonable likelihood that the party opposing relief from the stay will prevail at the final hearing.'

S.Rep.No. 989 95th Cong., 2nd Sess. 53, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5839. The primary assets of the Looneys at issue in this case are two trucks and a personal residence, so this can hardly be said to be a 'complex case'

within the meaning of the legislative history of § 362(e). Even if it appeared complex, the courts below erred in interpreting § 362(e) and § 102 to allow the denial, sua sponte and without notice or a determination of the likely outcome of the case, of a motion for relief from the automatic stay. Such an interpretation completely ignores the specific requirements of § 362(e)." *Id.* at 791–792.

The *River Hills* Court achieved the same result by stating:

"The district court's failure to hold a hearing on Fund's motion to lift the automatic stay for the actual foreclosure sale did not continue the stay in effect. Section 362(e) provides that the stay terminates thirty days after a request for relief 'unless the court, after notice and a hearing, orders such stay continued in effect.' The automatic stay therefore terminates even if the court fails to hold a hearing, whether its failure to do so results from the parties' failure to importune the court—due to their own inadvertence or to the absence of a dispute—or from the court's own inadvertence. The debtor is not without a remedy if the stay terminates, because the court retains, at the least, authority under 11 U.S.C. § 105(a) and Fed.Bankr.Rule 7065 to enjoin action against the debtor's property." *Id.* at 707.

The District Court in *Marine Power & Equipment,* supra, observed:

"In *In re Wood,* 33 B.R. 320 (Bankr.D. Idaho 1983), the bankruptcy stay was lifted by operation of law 30 days after a motion for relief was filed. Claiming inadvertence of counsel in failing to request a preliminary hearing, the debtors asked for reinstatement of the stay stating they could provide adequate protection payments and deserved an opportunity to effect a successful reorganization. The court observed that it could not exercise its equitable powers to nullify the effect of the statute. The court reasoned as follows:

'I find no authorization, statutory or otherwise, for "reinstitution" of the § 362(e) stay which arises upon the

filing of a petition for relief under the Code. That stay is automatic, and not dependent upon "order" of the Court. It arises by operation of statutory law and, if § 362(e) applies, is terminated by operation of law. It is, in my opinion, beyond the power of this Court to recall or recreate. Thus, there is no stay "order" which may be "reinstated." '

*Id.* at 321–322. The Court went on to observe the purpose of the statutory provision:

'Section 362(e) is a specific provision enacted by Congress for the purpose of providing a special protection and a speedy remedy to secured creditors. It was the result of perceived abuses under the 1898 Act. The section's operation is clear and unambiguous, and compliance therewith achieves the dual purposes of debtor protection and creditor relief.'

*Id.* at 322." *Id.* at 929.

■ Based on the above authorities, I conclude the automatic stay against Chase Bank of Arizona terminated by the express language of § 362(e), and is no longer in effect. This holding does not preclude the Debtor from seeking relief upon proper application under § 105 of the Code and Bankruptcy Rule 7065.

The second issue raised by the Bank is whether monies generated in the operation of the Debtor's business are cash collateral within the language of the Bank's security agreement in the form of two Deeds of Trust on the Debtor's real property in Tempe, Arizona, and security agreements coupled with an Assignment of Rents agreement. Both trust deeds grant to the Bank in addition to the lien on the real property a security interest in "all of the rents, issues and profits thereof ... subject however, to the right, power and authority hereinafter given to and conferred upon [the Bank] to possess the real property and to collect and apply such rents, issues and profits." The Deed of Trust later provides:

"Without regard to the adequacy of the security or the solvency of the [Debtor], [Bank] shall have the right to enforce the assignment to [Bank] of [Debtor's] interest in leases, rents, issues, profits and income from the subject property and/or furniture by any lawful method, including without limitation any one or more of the following methods:

'(1) the appointment of a receiver,

(2) the [Bank] taking possession of the property,

(3) collecting such monies directly from the parties obligated for payments, and

(4) injunction.' "

The security agreements between the Debtor and the Bank provide that the Bank shall have a security interest in:

"all of the Debtor's interest in any and all of the carpeting, draperies, curtains, hardware, furniture, fixtures and equipment, together with any and all personal property hereafter acquired and used in the operation of the premises located at 909 East Minton, Tempe, Arizona, rents, issues, lease payments, avails, profits, income, deposits, awards, refunds and any and all other sums of whatever nature and kind, together with the proceeds therefrom, received or to be received, or which Debtor has rights to or rights to receive in connection with the premises herein referred to."

I reject the creditor's argument on the authority of *In re Zeeway Corp.*, 71 B.R. 210 (9th Cir. BAP 1987).

■ As in *In re Zeeway Corp.*, the crux of the issue before the Court is whether under Arizona law, the Bank's security interest created by the Deeds of Trust extends to the income and profits generated by services of the Debtor's business. In the *Zeeway Corp.* Chapter 11 proceeding, the Debtor had executed a Deed of Trust containing the following "assignment of rents, profits and income" clause:

"trustor hereby assigns and transfers to beneficiary all of trustor's right, title and interest in and to all leases, rents, issues, profits or income from the trust property and each and every part thereof, includ-

ing all present and future leases or rental agreements."

*In re Zeeway Corp.*, 71 B.R. at 211.

The *Zeeway* Court found that the income derived from the operation of the Debtor's business was not produced by the real property but by the services conducted by the Debtor on the premises. *In re Zeeway Corp.*, 71 B.R. at 211. The Bankruptcy Appellate Panel drew a dispositive distinction between: (1) income attributable to real property which would be subject to a perfected assignment of rents or profits, and (2) income attributable to the services which occur upon the property which is not subject to a perfected assignment of rents or profits. The *Zeeway* Court, therefore, held that the income and profit generated by the Debtor's business was not cash collateral of the Bank.

The Trust Deeds and other assignments of rents in the instant case are indistinguishable from the security instruments in *Zeeway*. It is undisputed that the Debtor does not lease the subject property so as to derive any rental income. Rather, the income and profits which the Debtor derives from the premises at 909 East Minton, Tempe, Arizona, result from services delivered by the Debtor to its restaurant and entertainment customers. *Zeeway*, supra at 211, noted that income generated by restaurant is not produced by property but is the result of services provided by the business. The Debtor's income and profits, therefore, are not subject to the Deeds of Trust and are not cash collateral.

 Moreover, I accept the Debtor's argument that even if the Trust Deed instruments could be construed to provide the Bank with an interest in the Debtor's income and profit, such interest was not perfected by the Bank prior to the Debtor's Chapter 11 filing. Only perfected security interests give rise to "cash collateral" as defined by 11 U.S.C. § 363(b). *In re Johnson*, 62 B.R. 24 (9th Cir. BAP 1986). The perfected status of the Bank in the profits and income under the Deeds of Trust is governed not only by Arizona State law but also by the terms of the Trust Deeds themselves. *See* Ariz.Rev.Stat. § 33–702(B).

As noted above, the Trust Deeds provide that the Bank may enforce its interest in "rents and profits" only after it takes certain specified actions. The Bank failed to take such action prior to Bankruptcy. Thus, even if the Trust Deeds encumber the Debtor's income and profits, such encumbrance is not perfected and does not give rise to a "cash collateral" interest in such income and profits.

Although the Bank's motion merely asserts a "cash collateral" interest in "income" derived from the "premises" located at 909 East Minton, Tempe, Arizona, the Bank also attempts to assert to an interest in the rents, profits and income derived from the personal property located therein. The *Zeeway* holding with respect to the scope of a "rents, profits and income" clause applies equally to a security interest under a U.C.C. security agreement as it does to a security interest under a Deed of Trust. In short, the income and profits derived from the Debtor's operation of its business are not attributable to any personal property the Bank may have a security interest in. Only if the Bank could establish that the Debtor was selling or renting any of its collateral could a colorable argument be made that any income or rent was cash collateral of the Bank. No such allegation has been made by the Bank. The income and profit generated by the Debtor in the operation of its business, therefore, is not cash collateral of the Bank.

Moreover, with one exception, the Uniform Commercial Code establishes that a security interest in money can be perfected only by the secured creditor taking possession of the money. U.C.C. § 9–304(1). The exception to the "perfection by possession" rule of Section 9–304 is provided in Sections 9–306(2) and (3). Section 9–306 provides that a perfected security interest in property continues in the money "proceeds" of such property. UCC §§ 9–306(2) and (3). "Proceeds" is defined in Section 9–306 as "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds". Clearly, the Bank does not have possession of the money generated by the operation of the Debtor's

business so that the Bank could assert a perfected security interest in such income or profits. For these reasons, I conclude the Bank does not hold a perfected security interest in the money generated by the Debtor's business operation.

IT IS ORDERED:

(1) The motion for relief from the automatic stay has terminated under § 362(e) of the Code; and

(2) The motion for an order prohibiting use of cash collateral is denied.