RYMER, Circuit Judge:
 

 Wattson Pacific Ventures (“WPV”) appeals the district court’s order affirming a decision of the bankruptcy court that the revenues which Safeguard Self-Storage Trust receives from leasing storage space do not constitute cash collateral under 11 U.S.C. § 363(a). WPV argues that the contrary result is compelled under California law because the storage agreements are leases rather than licenses. We have jurisdiction pursuant to 28 U.S.C. § 168(d) and § 1291, and we reverse.
 

 I
 

 In February 1988, Ned Evans purchased a self-storage warehouse in Arcadia, California (the “Safeguard property”) from WPV. Evans executed promissory notes secured by first and second deeds of trust in favor of Valley Federal Savings and a note secured by a third deed of trust in favor of WPV. The WPV deed of trust provided “as additional security [to WPV] ... the right, power and authority ... to collect the rents, issues and profits of said property_” WPV recorded the deed of trust on February 12, 1988. At no time has WPV recorded a UCC financing statement covering the revenues from the self-storage property.
 

 In a series of transactions in December 1989, the Safeguard property was quit-claimed to a series of trusts controlled by Evans and is now owned by appellee Safeguard Self-Storage Trust. Evans ceased payment on the promissory note to WPV in April 1990. On November 8, 1990, WPV applied in California Superior Court for appointment of a receiver for the Safeguard property, and the Superior Court appointed a receiver on the same date. On November 9, 1990,Safeguard filed for Chapter 11 bankruptcy protection and is presently operating the Safeguard property as debtor-in-possession.
 

 Safeguard moved in bankruptcy court for an order declaring that the revenues from leasing self-storage space at the Safeguard property do not constitute cash collateral under 11 U.S.C. § 363(a). The bankruptcy court granted the requested order on February 8, 1991. The district court affirmed the order on appeal on July 17,1991. This timely appeal followed.
 

 We have jurisdiction over WPVs appeal because both the bankruptcy court’s and district court’s orders were final.
 
 Allen v. Old Nat’l Bank of Wash. (In re Allen),
 
 896 F.2d 416, 418 (9th Cir.1990). As we note below, the Bankruptcy Code gives significant protection to entities asserting an interest in cash collateral. It does so because of the risk arising from the consumption of the collateral in the debtor’s rehabilitative efforts. 2
 
 Collier on Bankruptcy,
 
 ¶ 363.02, at 363-16 (15th ed.1992). Given this possibility of irreparable harm, an order granting a debtor use over funds alleged to be cash collateral requires immediate appellate review.
 
 See Vylene Enter. v. Naugles, Inc. (In re Vylene Enter.),
 
 968 F.2d 887, 895-96 (9th Cir.1992) (irreparable harm to appellee should be considered in determining finality of lower court order in bankruptcy matters);
 
 MBank Dallas, N.A. v. O’Connor (In re O’Connor),
 
 808 F.2d 1393, 1395 & n. 1 (10th Cir.1987) (bankruptcy court order allowing debtor to use cash collateral is final under 28 U.S.C. § 158(a)).
 

 II
 

 Under the Bankruptcy Code, a bankruptcy trustee may not “use, sell, or lease cash collateral” of the debtor without the consent of “each entity that has an interest in such cash collateral” or an order of the bankruptcy court. 11 U.S.C. § 363(c)(2). “Cash collateral” is. defined as “cash, negotiable instruments, documents of title, securities, de
 
 *970
 
 posit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest. ...” 11 U.S.C. § 363(a). WPV asserts a security interest in Safeguard’s self-storage revenues, as cash collateral, pursuant to the deed of trust and 11 U.S.C. § 552(b), which provides, in part:
 

 [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest ... extends to property of the debtor ... and to proceeds [or] ... rents ... of such property, then such security interest extends to such proceeds [or] ... rents ... acquired by the estate after the commencement of the case to the extent provided by such security agreement - and by applicable nonbankruptcy law....
 

 “Applicable nonbankruptcy law” under 11 U.S.C. § 552(b) is in the present case state law, which is applied in determining the nature of interests in property where, as here, there is no conflict with “important national interests.”
 
 United States v. Kimbell Foods, Inc.,
 
 440 U.S. 715, 739-40, 99 S.Ct. 1448, 1464, 59 L.Ed.2d 711 (1979);
 
 see also Butner v. United States,
 
 440 U.S. 48, 52-55, 99 S.Ct. 914, 916-918, 59 L.Ed.2d 136 (1979).
 
 [1]
 
 The issue in this case is thus whether, under California law, WPV has a perfected security interest in Safeguard’s self-storage revenues. California law requires the filing of a UCC financing statement to perfect a security interest, CahCom. Code §§ 9301 et seq., with certain exceptions. WPV, which did not file a UCC financing statement, contends that it falls within Cal.Com. Code § 9104(j), which provides an exception from the UCC requirements for “the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder....” Safeguard argues that § 9104(j) does not apply because its agreement with self-storage customers is a license, not a lease. This case, therefore, turns on whether the self-storage agreement is a lease or a license.
 

 III
 

 The issue of whether a self-storage agreement is a lease or a license is apparently a question of first impression in all courts. Resolving this issue requires the application of California law to essentially undisputed facts. A mixed question of law and fact is reviewed de novo when, as here, “the question requires consideration of legal concepts in mix of facts and law.”
 
 Boone v. United States,
 
 944 F.2d 1489, 1492 (9th Cir.1991).
 

 “Under California law, the intent of the parties governs the meaning of the contract. The relevant intent is ‘objective’ — that is, the intent manifested in the agreement and by surrounding conduct_”
 
 United Commercial Ins. Serv. v. Paymaster Corp.,
 
 962 F.2d 853, 856 (9th Cir.) (citation omitted),
 
 cert. denied,
 
 — U.S. -, 113 S.Ct. 660, 121 L.Ed.2d 585 (1992). The self-storage Rental Agreement at issue begins with the following provision:
 

 The undersigned (“Tenant”) hereby agrees to rent from Self Storage (“Landlord”) and Landlord hereby agrees to rent to Tenant that certain parcel of improved real property hereinafter designated by number and referred to herein as the “storage space” on' the terms and conditions contained in this RENTAL AGREEMENT.
 

 Similar language throughout the agreement indicates that it was unambiguously intended to be a lease, rather than a license. Therefore, the ruling of the bankruptcy court that the Rental Agreement creates a license rather than a lease is correct only if this type of contract is not permitted to be a lease under California law — i.e., if the parties used language of leasing in a contract that is in substance a license. In short, we must determine whether an animal which looks like a duck, walks like a duck, and quacks like a duck, is in fact a duck.
 

 A
 

 The California Self-Service Storage Facility Act (“Self-Storage Act”), CaLBus. & Prof. Code §§ 21700 et seq., defines a “self-
 
 *971
 
 service storage facility” as “any real property designed and used for the purpose of renting or leasing individual storage space to occu-pants_” CaLBus. & Prof. Code § 21701(a). An “occupant” means “a person, or his or her sublessee, successor, or as-sign_” Cal.Bus. & Prof. Code § 21701(c). A “rental agreement” for a self-service storage facility “means any written agreement or lease_” CaLBus. & Prof. Code § 21701(d).
 

 The Self-Storage Act thus uses the language of leasing, indicating that the California legislature contemplated that self-storage agreements may be leases. For the purposes of the present case, it is of little significance that the Act might also permit a self-storage agreement to be a license. What is important is that the Act permits the Rental Agreement to be construed according to its plain language: as a lease. WPV also points out that the “sublessee, successor, or assign” language of § 21701(c) would be meaningless if such agreements could only be licenses, because a license is generally nonassignable.
 
 See
 
 4 B.E. Witkin,
 
 Summary of California Law,
 
 Real Property § 481 (9th ed. 1987). Safeguard responds that this consideration is irrelevant in the present case, because the Rental Agreement itself provides that it is nonassignable. However, Safeguard’s response fails to explain the meaning of § 21701(c) or to recognize that a lease may also provide that it is nonassignable.
 

 Safeguard relies on several provisions of the Self-Storage Act which it presents as evidence of legislative intent that self-storage agreements are not to be considered leases. First, Safeguard notes that the Self-Storage Act provides an expedited remedy against occupants of self-storage units who are delinquent in payment. Cal.Bus. & Prof. Code §§ 21703-21711.
 
 [2]
 
 The self-storage owner’s remedy also includes a lien on the occupant’s property, Cal.Bus. & Prof. Code §§ 21705-21707, like the lien which may be obtained by a hotel owner (a licensor). See
 
 In re Ashkenazy Enter.,
 
 94 B.R. 645, 647 (Bankr.C.D.Cal.1986). Although these procedures are in some ways more expedited than the general unlawful detainer provisions of Cal.Civ.Proc. Code §§ 1161 et seq., this is not true in all respects: CaLBus. & Prof. Code § 21703 provides for 14-day mailed notice of delinquency while Cal.Civ.Proc. Code § 1161a provides for a three-day notice to quit.
 
 [3]
 
 Furthermore, the self-storage lien provisions do not apply unless the self-storage agreement refers to them, CaLBus. & Prof. Code § 21712(b); similarly, any other landlord may obtain a lien through a lease provision, 4 B.E. Witkin,
 
 Summary of California Law,
 
 Real Property § 724 (9th ed.1987). To the extent there are differences, the procedures under the Self-Storage Act are consistent with the unique nature of storage spaces, which are non-residential and are typically not visited by their occupants for long periods of time. The fact that self-storage agreements are
 
 sui generis
 
 may justify the somewhat expedited possession procedures in the Self-Storage Act, but does not mean that self-storage agreements may not be considered leases.
 

 Second, Safeguard points out that managers of self-storage facilities are not required to have a real estate license. Cal. Bus. & Prof. Code § 21701(b). This carries little weight in view of the fact that resident managers of apartment buildings, who plainly engage in leasing real property, are also not required to have a real estate license. CaLBus. & Prof. Code § 10131.01. While
 
 *972
 
 Safeguard is correct that non-resident managers of apartment buildings must possess real estate licenses under California law, it is simply not the case that such a license is always a prerequisite for leasing real property-
 

 Third, Safeguard notes that the Self-Storage Act provides that “[n]o occupant shall use a self-service storage facility for residential purposes.” Cal.Bus. & Prof. Code § 21701(a). WPV argues that this provision does not diminish the right of the occupant to possess the storage space exclusively and points out that a lease of commercial property might also prohibit residential use.
 

 In sum, the sections of the Self-Storage Act on which Safeguard relies do show that self-storage occupants have some similarity to licensees. However, these similarities are insufficient to overcome the clear indicia of legislative intent in the Act to authorize real property leases of self-storage spaces.
 

 B
 

 California common law also suggests that the Rental Agreement is a lease. The test for
 

 whether an agreement for the use of real estate is a license or a lease is whether the contract gives exclusive possession of the premises against all the world, including the owner, in which case it is a lease, or whether it merely confers a privilege to occupy under the owner, in which case it is a license, and this is a question of law arising out of the construction of the instrument.
 

 Von Goerlitz v. Turner,
 
 65 Cal.App.2d 425, 150 P.2d 278, 280 (1944) (citation omitted);
 
 see also Chan v. Antepenko,
 
 203 Cal.App.3d Supp. 21, 250 Cal.Rptr. 851, 852 (1988)
 
 (citing Von Goerlitz).
 
 The use of lease language “is not conclusive of intention but strongly indicates that the parties contemplated such a [lease] relationship.”
 
 Beckett v. City of Paris Dry Goods Co.,
 
 14 Cal.2d 633, 96 P.2d 122, 124 (1939) (citation omitted);
 
 see also O’Shea v. Claude C. Wood Co.,
 
 97 Cal.App.3d 903, 159 Cal.Rptr. 125, 128 (1979) (“No particular legal terminology is required in the making of a lease, but it is essential that the instrument show an intention to establish the relationship of landlord and tenant.”;
 
 citing Beckett).
 
 Other characteristics of a lease are “a definite description of the property leased[,] an agreement for rental to be paid at particular times during a specified term,”
 
 Beckett,
 
 96 P.2d at 124;
 
 O’Shea,
 
 159 Cal.Rptr. at 128, and a requirement of notice upon termination,
 
 Chan,
 
 250 Cal.Rptr. at 852-53.
 

 Safeguard’s self-storage tenants secure their storage spaces with their own lock and have exclusive access to the spaces. The Rental Agreement provides that “Landlord does not have any liability for Tenant’s stored goods, and that the care, custody and control of said goods is with the Tenant and not the Landlord.” Furthermore, the Rental Agreement uses lease language, provides a definite description of the storage space by number, provides for payment of periodic rent, and requires notice of termination.
 

 Safeguard argues that self-storage tenants do not have exclusive occupancy rights because the facility owner restricts access during certain hours, that license agreements and leases of personal property may also require notice of termination, and that licenses, such as the right to use a hotel room, may also describe the relevant property with specificity. While Safeguard is again correct that the self-storage Rental Agreement is an atypical lease in some respects, the agreement nevertheless meets the definition of a lease under California law.
 

 C
 

 Safeguard also argues that bankruptcy courts in this circuit have found agreements similar to the one at issue here to be licenses rather than leases.
 

 In
 
 In re Ashkenazy Enter.,
 
 94 B.R. 645 (Bankr.C.D.Cal.1986), the court held that the interest conveyed in renting a hotel room is a license. 94 B.R. at 647;
 
 see also Sacramento Mansion, Ltd. v. Sacramento Sav. and Loan Ass’n (In re Sacramento Mansion, Ltd.),
 
 117 B.R. 592, 602-07 (Bankr.D.Col.1990) (same; applying California law). However, the
 
 Ash-kenazy
 
 court relied on the facts that hotel room payments largely cover provision of
 
 *973
 
 hotel services and that CaiCiv. Code § 1940 specifically excludes “[t]ransient occupan[ts] in a hotel” from the definition of “persons who hire dwelling units.”
 
 Id.,
 
 94 B.R. at 647. These factors are absent in the present case.
 
 [4]
 
 Furthermore, the court in
 
 In re S.F. Drake Hotel Assoc.,
 
 131 B.R. 156 (Bankr.N.D.Cal.1991), aff
 
 'd,
 
 147 B.R. 538 (N.D.Cal.1992), recently reached the opposite result from the
 
 Ashkenazy
 
 court and concluded that hotel room revenues are rent under California law.
 
 Id.
 
 at 158-61.
 

 Safeguard also relies on
 
 United States Dep’t of Housing and Urban Dev. v. Hillside Assoc. (In re Hillside
 
 Assoc.
 
 Ltd. Partnership),
 
 121 B.R. 23 (9th Cir. BAP 1990),
 
 appeal dismissed,
 
 990 F.2d 1258 (9th Cir.1993), in which the court held that nursing home fees do not constitute “rents,” based largely on the fact that such fees are primarily payments for services.
 
 Id.
 
 at 24.
 
 See also Zeeway Corp. v. Rio Salado Bank (In re Zeeway Corp.),
 
 71 B.R. 210, 212 (9th Cir. BAP 1987) (racetrack revenues not rents).
 

 Although these cases are somewhat analogous, none of them establishes that a contract, as here, which is explicitly drafted as a lease under a statutory scheme which permits it to be a lease, and which has the characteristics of lease, is not a lease.
 

 D
 

 We conclude that the Rental Agreement, construed in accord with the California Self-Storage Act and the California common law of leases, is by its own terms a lease of real property within Cal.Com. Code § 9104(j).
 

 Safeguard argues that this approach will produce uncertainty in future cases by requiring courts and actors in the self-storage marketplace to examine individual self-storage agreements to determine whether the interest created is a lease or a license. Safeguard urges that we instead adopt a per se rule whether self-storage agreements are leases or licenses. We disagree that a categorical approach is appropriate in the present case. Our approach enforces the manifest intent of the parties to the Rental Agreement by construing it as a lease.
 

 IV
 

 Safeguard argues that even if the revenues from the self-storage agreements are construed as rents under Cal.Com. Code § 9104(j), WPV has not perfected a security interest in the rents because the receiver appointed on November 8, 1990 did not take actual possession of the Safeguard property before Safeguard filed for bankruptcy on November 9, 1990.
 

 Where an interest in property is provided as “additional security,” as in the deed of trust in the present case, the holder of the security interest must take possession of the property to perfect its security interest. 3 B.E. Witkin,
 
 Summary of California Law,
 
 Security Transactions in Real Property § 89 (9th ed. 1987). This requirement may be satisfied by the appointment of a receiver.
 
 Id.; Kinnison v. Guaranty Liquidating Corp.,
 
 18 Cal.2d 256, 115 P.2d 450, 452-53 (1941) (“Where the mortgage or deed of trust contains a clause which merely includes the rents as a portion of the property pledged to secure the debt, ... it is well settled that the mortgagee must actually acquire possession of the mortgaged property by consent or lawful procedure or must secure the appointment of a receiver to perfect his claim to the rents.”). Safeguard offers no authority for the proposition that a properly appointed receiver must take physical possession of the property to perfect a security interest.
 

 Because it is undisputed that a receiver was appointed for the Safeguard property prior to the filing of Safeguard’s bankruptcy
 
 *974
 
 petition,
 
 [5]
 
 we conclude that WPV has a perfected security interest in the rents of the property.
 

 V
 

 For the reasons set out above, we reverse the district court’s order and remand with instructions to remand to bankruptcy court for an order that Safeguard’s self-storage revenues constitute cash collateral under WPWs deed of trust.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . WPV argues that the bankruptcy court failed to follow California law, and thus improperly created a federal common law of property rights in this area. We do not so interpret the bankruptcy court’s order. The bankruptcy court explicitly stated that "[s]tate law controls the perfection issue in this case."
 

 [2]
 

 . The statute provides that when payments are 14 days overdue, the owner of the storage facility may send a notice by certified mail to the occupant. Cal.Bus. & Prof. Code § 21703. If payment has not been made within 14 days of mailing of the notice (or longer period specified by the owner), a lien in favor of the owner attaches to the property in the storage space, and the owner may "deny [the] occupant access to the space, enter the space, ... remove any property found therein to a place of safe keeping," and serve notice of a lien sale. Cal.Bus. & Prof. Code § 21705. The occupant may compel the owner to proceed in court by completing a form which the owner must mail with the notice of lien sale. Cal.Bus. & Prof. Code § 21705(b).
 

 [3]
 

 . Safeguard correctly notes that a self-storage owner may take possession after the 14-day period if the violation is not cured, Cal.Bus. & Prof. Code § 21705, while the unlawful detainer procedures require a court action by the party seeking possession, Cal.Civ.Proc. Code §§ 1166— 1166a.
 

 [4]
 

 . Safeguard argues that the fact that extensive services are provided by hotels was not the sole controlling factor in
 
 Ashkenazy
 
 and that Safeguard also provides significant services to its self-service customers — such as extended hours of operation, daily payment rates, and assistance in obtaining insurance, moving services, and locksmith services. However, these services are
 
 de minimis
 
 in comparison to hotel services, and in many instances are available only at extra cost to the tenant. Safeguard also argues that the failure to exempt self-service facility owners in Cal. Civ. Code § 1940 does not mean that the legislature intended to create a landlord-tenant relationship in that context. Be this as it may, it is apparent that the legal characterization of hotel room revenues is not controlling of the legal characterization of self-storage revenues.
 

 [5]
 

 . Safeguard’s attorney suggested in a declaration filed in bankruptcy court that WPV improperly sought appointment of the receiver
 
 ex parte
 
 in order to secure the appointment before Safeguard filed for bankruptcy protection. Safeguard does not pursue this argument on appeal.