In re SCOTTSDALE MEDICAL
PAVILION, an Arizona limited
partnership, Debtor.

SCOTTSDALE MEDICAL PAVILION,
Appellant,

v.

MUTUAL BENEFIT LIFE INSURANCE
COMPANY IN REHABILITATION,
successor to Mutual Benefit Life Insur-
ance Co., Appellee.

BAP No. AZ–92–1743–PRV.
Bankruptcy No. 92–1006 PHX RTB.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued Feb. 19, 1993.

Submitted May 10, 1993.

Decided Sept. 27, 1993.

David W. Eagle, Phoenix, AZ, for appellant.

Paul E. Tang, Tucson, AZ, for appellee.

Before: PERRIS, RUSSELL, and VOLINN, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge:

Scottsdale Medical Pavilion ("debtor") appeals an order concluding that rents collected by it prepetition are cash collateral as defined by 11 U.S.C. § 363(a) and denying the debtor use of that collateral. We AFFIRM.

## FACTS

The debtor executed a promissory note payable to the order of Mutual Benefit Life Insurance Company ("Mutual")[1] secured by a deed of trust on the debtor's rental property. To further secure the obligation the debtor also executed an assignment of rents and leases (the "Assignment"). The Assignment provided that the debtor

does hereby irrevocably grant, assign, transfer, convey and set over to THE MUTUAL BENEFIT LIFE INSURANCE COMPANY ... all the right, title and interest of [the debtor] in and to all the existing and future leases ... and all rents, issues and profits ... and other monies now due and payable and/or hereafter to become due and payable to [the debtor]....

1. The appellee is Mutual Benefit Life Insurance Company in Rehabilitation, a successor to Mutual Benefit Life Insurance Company. For the purposes of this appeal, there is no need to distinguish between the two, and we will refer to both as "Mutual."

The Assignment was duly recorded in the real property records of the county in which the property was located. The Assignment contained provisions, discussed more fully below, allowing Mutual to collect the rents directly from tenants upon delivering notice to them.

The debtor failed to make payments when due, and on January 24, 1992, Mutual sent a letter to the tenants instructing them to forward all rent payments to Mutual. Three days later, the debtor filed a Chapter 11 petition. On the date of the petition, the debtor held approximately $15,000 in a bank account, all of which was from prepetition rental income.[2]

The debtor filed its motion for authority to use cash collateral on January 30, 1992. On June 23, 1992, the trial judge entered an order which treated the prepetition rents as cash collateral by requiring their sequestration and prohibiting their use by the debtor. The debtor timely filed its notice of appeal on July 2, 1992.

## ISSUES

When faced with questions concerning a debtor's entitlement to use rents, many decisions collapse all steps of the analysis into one question—is the creditor's interest perfected? *See Wattson Pacific Ventures v. Valley Federal Savings & Loan (In re Safeguard)*, 2 F.3d 967, 969 (9th Cir.1993). While the determination of whether a debtor may use cash collateral may ultimately boil down to that question, skipping the intermediate steps in the analysis may result in the confusion or blending together of different concepts with independent significance. *See In re Park at Dash Point L.P.*, 121 B.R. 850, 855 (Bankr.W.D.Wash. 1990); *aff'd* 152 B.R. 300 (W.D.Wash.1991), *aff'd* 985 F.2d 1008 (9th Cir.1993) (noting that as caselaw dealing with assigned rents has developed, the distinction between the

concepts of perfection and enforcement has become blurred). To avoid any confusion, we separately consider each of the following issues:

1. Whether, under Arizona law, the rents collected by the debtor prepetition constitute cash collateral as defined in § 363(a); and,

2. If so, whether the court erred in ordering the funds sequestered and denying the debtor use of those funds.

In addition, we consider whether the debtor is entitled to an award of attorney fees.

## STANDARD OF REVIEW

 We review *de novo* the legal standard used by the trial judge in determining whether the funds in question are cash collateral. *In re Zeeway Corp.*, 71 B.R. 210, 211 (9th Cir. BAP 1987). Resolution of the issues before the Panel also involves contract interpretation, which we review *de novo* where resort to extrinsic evidence is not necessary. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir.1989). Whether the debtor is entitled to its attorney fees for litigating cash collateral issues presents a question of law which we also review *de novo*. *In re Fobian*, 951 F.2d 1149, 1151 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3031, 120 L.Ed.2d 902 (1992).

## DISCUSSION

I. *ARE THE PREPETITION RENTS COLLECTED BY THE DEBTOR CASH COLLATERAL?*

A. *Definition of Cash Collateral.* Section 363(c)(2)[3] prohibits a debtor in possession from using cash collateral absent a court order or consent from each entity that has an interest in the cash collateral. Cash collateral is defined in § 363(a) as

---

**2.** The debtor contends that all those funds were from rent collected prior to notification of the tenants on January 24, 1992. Appellant's Opening Br. at 7, ¶ 6. While the trial judge found that the funds were collected by the debtor prepetition, the judge made no finding that the rents were collected prior to the notification. For the purposes of this ruling, we will assume

the debtor is correct, and that all rents at issue were received before Mutual's notification to the tenants.

**3.** Unless otherwise indicated, all statutory references are to Title 11 of the United States Code.

cash ... deposit accounts, or other cash equivalents whenever acquired *in which the estate and an entity other than the estate have an interest* and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title (emphasis added).

Thus, if Mutual has any legally cognizable interest in the funds at issue they are cash collateral. To constitute cash collateral, it is not necessary that Mutual show it is entitled to immediate possession of the funds or that the interest is perfected.[4]

The debtor contends that because the funds at issue are held in a bank account,[5] they no longer constitute "rents" covered by the assignment, but are more properly characterized as an account. That argument is unpersuasive. All "rents" are converted into a different form upon payment. For example, a rent payment represented by a check becomes an "instrument," but is nonetheless covered by a security interest in the rent. If the debtor's argument were accepted, then all assignments of rents would be illusory, as the funds would no longer be rents once paid. We therefore conclude that because all the funds in the account are directly attributable to rents they are rents within the scope of the assignment of rents provisions. The question is whether Mutual had an interest in those rents under Arizona law.

B. *Did Mutual Have an Interest in the Rents?* Both parties agree the question of whether Mutual had an interest in the rents on the date of the petition is governed by the laws of the state of Arizona. *Butner v. United States*, 440 U.S. 48, 52, 99 S.Ct. 914, 916, 59 L.Ed.2d 136 (1979); *See In re Safeguard*, 2 F.3d at 969. Grounding our decision in Arizona law is a challenging task, as the existing Arizona case law dealing with security interests in rents is murky, contradictory and, at times, fails to take into account statutory changes concerning assignments of rents.

1. THE CASELAW. The earliest relevant case decided under Arizona law is *Dart v. Western Savings and Loan Assn.*, 103 Ariz. 170, 438 P.2d 407 (1968). That case holds that a receiver can be appointed pending foreclosure only if the mortgagee showed that his interest in the real property was inadequately protected. After *Dart* was decided, the Arizona legislature enacted A.R.S. § 33–702(B), which expressly provides for assignments of rent in both mortgages and trust deeds. Prior to the enactment of § 33–702(B), Arizona had no statute specifically dealing with assignments of rent. Section 33–702(B) effectively overruled the *Dart* case by providing, among other things, that a beneficiary was entitled to enforce its assignment by appointment of a receiver "without regard to the adequacy of the security...."

After enactment of § 33–702(B) the reported cases dealing with Arizona law continued to look for guidance to Arizona case law which predated § 33–702(B) and law imported from other jurisdictions rather than focusing on the language employed by the Arizona legislature.

The stage was set by *Prudential Ins. Co. v. Fifty Associates*, 503 F.2d 925, 929 (9th Cir.1974), which states

---

**4.** *But see In re Corner Pockets of Southwest, Inc.,* 85 B.R. 559, 563 (Bankr.D.Mont.1988). In *Corner Pockets,* the court stated that "[o]nly perfected security interests give rise to 'cash collateral'...." That statement is based upon a misinterpretation of our decision in *In re Johnson,* 62 B.R. 24 (9th Cir. BAP 1986). In *Johnson* we expressly acknowledged that an unperfected interest technically falls within the definition of cash collateral. *Id.* at 30. The significance of *Corner Pockets* to the § 363 analysis is that an unperfected interest is not entitled to much in the way of adequate protection under § 363(e). That is so because an unperfected interest is subject to avoidance under § 544.

**5.** Debtor, a single asset real estate partnership, concedes that all funds in the bank account are "attributable to rental income" from the real property at issue. Appellant's Opening Brief, filed October 9, 1992, p. 7. This is not a case that involves commingling or tracing questions.

[g]enerally, the mortgagee is not entitled to receive the rents from mortgaged property prior to a default or commencement of foreclosure proceedings. However, the mortgage lien on such rents *ripens* upon the appointment of a receiver. (emphasis added).

The above statement does not provide much guidance in the present case for several reasons. First, we cannot tell what the term "ripens" means as used in that case. Must a lien "ripen" before the lienor has an interest in property, or is "ripening" more akin to perfection? Second, *Prudential* concerned entitlement to rents collected *after* the creditor attempted to enforce the assignment of rents. The question in this case is whether the creditor has an interest in rents collected before enforcement proceedings. Finally, *Prudential* makes no reference to A.R.S. § 33–702(B), and may have been decided under the law as it existed prior to that statute.

In *In re American Continental Corp.*, 105 B.R. 564 (Bankr.D.Ariz.1989) (Curley, Bankr. J.), the court assumed that *Prudential* was decided under the prior law, but nevertheless appears to fall back upon *Prudential's* "ripening" concept. The *American Continental* case interprets "ripening" as synonymous with "choateness." Having introduced the concept of "choateness" into the picture, the *American Continental* court concludes that under Arizona law, a lien in rents both arises and is perfected by virtue of taking one of the acts set forth in A.R.S. § 33–702(B), and the lien and its perfection relate back to the date of recordation.

The *American Continental* decision was criticized in several respects (including its reliance on the concept of choateness) by *In re Tucson Industrial Partners*, 129 B.R. 614 (9th Cir. BAP 1991), *vacated as moot*, 990 F.2d 1099 (9th Cir.1993). The *Tucson Industrial* case, though vacated, properly noted that in resolving questions

concerning assignments of rent, A.R.S. § 33–702(B) is the "relevant statute."

Finally, *In re Multi–Group III Ltd. Partnership*, 99 B.R. 5, 10 (Bankr.D.Ariz. 1989) (Ollason, Bankr. J.) took another approach, concluding that "[u]nder Arizona law, an assignment does not pass title to rents until enforced. Once enforced, it does not pass title to prior rents." The case is not persuasive because it neither cites Arizona case law in support of its conclusion nor does it attempt to analyze A.R.S. § 33–702(B) despite acknowledging its relevance. *Multi–Group* bases its conclusion in part upon *In re Johnson*, 62 B.R. 24 (9th Cir. BAP 1986), which it contends applied a Washington statute similar to Arizona's. 99 B.R. at 8. We have examined the Washington statute applied by the *Johnson* court, and find it dissimilar enough that the *Johnson* analysis is inapplicable to the Arizona statute.[6]

The debtor also relies on cases interpreting the law of other jurisdictions. However, the debtor points to no other jurisdiction with a statute comparable to A.R.S. 33–702(B). Before resorting to decisions from other jurisdictions we believe it appropriate to take a fresh look at the plain language used by the Arizona legislature.

2. A.R.S. § 33–702(B)

A.R.S. Section 33–702(B) (West 1990) provides as follows:

A mortgage or trust deed may provide for *an assignment* to the mortgagee or beneficiary *of* the interest of the mortgagor or trustor in leases, *rents*, issues, profits or income from the property covered thereby, *whether effective before, upon or after a default under such mortgage or trust deed* or any contract secured thereby, and such assignment *may be enforced* without regard to the adequacy of the security or the solvency of the mortgagor or trustor *by any one or more of the following methods:*

1. The appointment of a receiver.

---

**6.** As discussed later in this ruling, the Arizona statute distinguishes between the time an interest in rents arises in favor of the creditor from the procedures to enforce the interest. The

Washington statute analyzed in *Johnson* appears silent on the issue of when an interest in rents arises, and discusses only methods of enforcement.

2. The mortgagee or beneficiary taking possession of the property, or without the mortgagee or beneficiary taking possession of the property.

3. Collecting such monies directly from the parties obligated for payment.

4. Injunction. (emphasis added).

■ The highlighted language suggests that the effectiveness of an assignment of rents is determined with reference to the instrument creating the assignment, and that such effectiveness can be either before, upon or after a default. The underlined language further distinguishes between effectiveness of an interest in rents and the enforcement of that interest. In other words, a creditor may have an effective interest in rents even though he or she does not have the present right to enforce that interest by the various methods specified in the statute.

■ The assignment of rents in the instant case granted an immediate interest in both present and future rents to Mutual. The relevant language is found in paragraph 3.7, which reads as follows:

3. IT IS MUTUALLY AGREED THAT:

. . . .

3.7 *This Assignment constitutes a present and absolute assignment* to [Mutual]. However, so long as there shall exist no default by [the debtor] in the payment of any sum due under the Note or in the performance of any obligation, covenant or agreement contained in this Assignment, or any realty mortgage or deed of trust securing the Note, ... [the debtor] shall have the right to collect at the time or, but not prior to, the date provided for payment, all rents, income and profits arising under the Leases and to retain and use the same. (emphasis added).

The underlined language expressly makes the assignment to Mutual effective immediately upon execution of the agreement. Though subsequent language in ¶ 3.7 gives the debtor a conditional right to collect (but not necessarily to retain) those rents absent a default, the debtor's conditional right to collect rents does not extinguish Mutual's interest in those rents. Just as a Deed of Trust conveys an immediate interest in land even in the absence of a default or other collection actions, so too did the Assignment of Rents convey an immediate interest in the rents to Mutual.

The debtor contends that Mutual agreed its interest would not attach to the rents until after the tenants were notified to remit the rents directly to Mutual. In support, the debtor relies on ¶ 2.6 of the agreement, which provides

2. [THE DEBTOR] WARRANTS, COVENANTS AND AGREES THAT:

. . . .

2.6 [The debtor] hereby authorizes and directs the lessees and tenants of the Real Property that, upon written notice from Assignee, all payments required under the Leases, or in any way respecting same, shall be paid directly to [Lessee] as they become due. [Debtor] hereby relieves said lessees and tenants from any liability to [Debtor] by reason of said payments being made to [Mutual]. *Nevertheless, until [Mutual] notifies in writing said lessees and tenants to make such payments to [Mutual], [the debtor] shall be entitled to collect all such rents and/or payments....* Such notice shall be effective twenty-four (24) hours after being deposited in the United States mail.... (emphasis added).

The above language concerns only Mutual's right to collect the rents directly from the tenants, and required Mutual to give notice to the tenants before doing so. The provision is silent as to the debtor's right to use the rents once collected, and cannot be construed as a waiver of the creditor's rights in the rents. If the above section were intended as a complete relinquishment by Mutual of any interest in the rents collected by the debtor, it is reasonable to assume that language granting the debtor free use of the rents collected would also appear in that paragraph.

Instead, the relevant language concerning the debtor's right to use the rents is

found in paragraph 3.7, which reads as follows:

3. IT IS MUTUALLY AGREED THAT:
....

3.7 *This Assignment constitutes a present and absolute assignment* to [Mutual]. However, *so long as there shall exist no default by [the debtor]* in the payment of any sum due under the Note or in the performance of any obligation, covenant or agreement contained in this Assignment, or any realty mortgage or deed of trust securing the Note, ... *[the debtor] shall have the right to collect* at the time of, but not prior to, the date provided for payment, *all rents*, income and profits arising under the Leases *and to retain and use the same.* (emphasis added).

In short, paragraph 3.7 makes the debtor's right to collect, *retain* and *use* the rents contingent upon its not being in default. Upon default, the debtor loses the rights granted under ¶ 3.7 to both retain and use the rents. While it is possible that the debtor could rely on ¶ 2.6 to continue collecting rents after a default until such time as notice to tenants is given, ¶ 2.6 does not give the debtor the right to *retain* those rents, as it is silent on the question.

The debtor, ignoring the fact that the right to retain rents is in a different paragraph than the right to collect rents, contends that its right to collect the prepetition rents precludes Mutual from claiming an interest in them. In support, the debtor relies primarily upon *In re Multi–Group, In re American Continental,* and *In re Mount Pleasant Ltd. Partnership,* 144 B.R. 727 (Bankr.W.D.Mich.1992).

Of the three, the contractual provisions in *Multi–Group* are the most similar to those of ¶ 3.7 in the instant case. In *Multi–Group,* as here, the assignment of rents recited that it conveyed an absolute and immediate interest in the rents. It also provided that the debtor "shall have a license to receive, collect and enjoy the rents ... accruing from the premises until an

'event of Default' has occurred...." 99 B.R. at 7. Most importantly, the *Multi–Group* agreement provided that "upon such default, such license shall cease automatically, without need of notice...." *Id.*

The *Multi–Group* court essentially ignored the contractual language because of its conclusion that, regardless of the agreement between the parties, "under Arizona law, an assignment does not pass title to rents until enforced. Once enforced, it does not pass title to prior rents." 99 B.R. at 8. For the reasons previously stated, we believe that *Multi–Group* incorrectly interprets Arizona law, and that an interest in rents passes in accordance with the parties' agreement. Accordingly, we are not persuaded by the reasoning of *Multi–Group* because it did not attempt to give effect to the parties' agreement.

For the same reason, we do not find *American Continental* helpful in construing the language at issue. The *American Continental* court focused on whether the assignment at issue was intended as an assignment for security purposes or as an absolute assignment. Based on A.R.S. § 33–702(B) and the agreement at issue, we do not believe that whether the parties intended the assignment to be absolute or for security purposes is determinative of whether Mutual had an interest in the rents. We interpret ¶ 3.7 as granting an immediate interest in rents to Mutual, but limiting Mutual's right to enforce that interest so long as the debtor is not in default. Upon such default, the debtor's right to retain rents and Mutual's restriction on enforcing its interest both terminate automatically, and Mutual could enforce its interest in all rents, regardless of whether those rents were collected by the debtor or Mutual.[7] Accordingly, we conclude that on the date of the petition, Mutual had "an interest" in the rents collected by the debtor within the meaning of § 363(a), and those rents therefore constituted cash collateral.

**7.** The statutory method by which Mutual could enforce its interest in the rents collected by the debtor is found in A.R.S. § 33–702(B)(4), which

would allow Mutual to obtain an injunction requiring the debtor to turn over the collected funds.

## II. *DID THE COURT ERR IN REQUIRING SEQUESTRATION OF THE CASH COLLATERAL AND DENYING THE DEBTOR ITS USE?*

 Section 363(c)(4) states that the trustee (or debtor in possession) "shall segregate and account for any cash collateral in the trustee's possession, custody or control." Sequestration of cash collateral, including rents in which a creditor has a security interest, is automatic under the statute.[8] The trustee or debtor in possession may use cash collateral only upon the conditions set forth in § 363(c)(2). That subsection requires either consent by the creditor to the use of its cash collateral, or a court order authorizing its use. Under § 363(e), in all cases the debtor must provide adequate protection of the creditor's interest as a condition of using cash collateral.

 Thus, the question is the extent to which Mutual's interest was entitled to protection. The debtor contends that Mutual's interest in the rents was subject to avoidance under the Code. If the creditor's interest in cash collateral is unperfected and therefore subject to avoidance under § 544, the interest to be protected is tenuous, and not deserving of much in the way of adequate protection.

According to the debtor, five "venerable" United States Supreme Court cases establish that an attaching creditor prevails over the interest of a mortgagee with an assignment of rents "not vested by possession of the property or appointment of a receiver." All are pre-Code cases, the most recent of which was penned over a century ago. The debtor contends they still have vitality under the Code, citing *In re Stanley Station Assoc., L.P.*, 139 B.R. 990, 997 (Bankr. D.Kan.1992). However, the rule of decision in *Stanley Station* was provided by state law (in that case, Kansas) in accordance with *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). So too does Arizona law control the question of perfection in this case.

The case law concerning perfection of an interest in rents under Arizona law is just as fragmented as the case law concerning when the lien in rents arises. In addition to the bankruptcy decisions discussed previously, the debtor relies upon *In re Corner Pockets of Southwest, Inc.*, 85 B.R. 559, 563 (Bankr.D.Mont.1988) for the proposition that because Mutual took none of the enforcement actions outlined in A.R.S. § 33–702(B), its interest is unperfected.

*Corner Pockets*, like many other assignment of rents cases, fails to distinguish between when the creditor obtains an interest in rents, perfection of that interest and enforcement of the interest. The remedies outlined in A.R.S. § 33–702(B) set forth permissible means and conditions of enforcement of an interest upon default. They do not purport to establish the method of perfection.

 A.R.S. § 47–9104.10 (West 1988) provides that [UCC Article 9] does not apply "... to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder; ..." Under Arizona law, assignments of rent for security are treated as interests in real property. *See Valley National Bank v. AVCO Development Co.*, 14 Ariz.App. 56, 480 P.2d 671, 675 (1971) (assignment of rents is a transfer of an interest in realty). The proper method of perfecting an assignment of rents in Arizona is by recording in the real property records as provided by A.R.S. § 33–411, which Mutual has done. Mutual's interest in the rents is therefore perfected.

 In this case, it appears that under Arizona law Mutual's interest in the rents was fully perfected. An attaching creditor could not prevail over the interest of Mutual in the rents. *See Bolo Corp. v. Homes & Son Construction Co.*, 105 Ariz. 343, 464 P.2d 788, 792 (1970) (garnishment of previously assigned rents was "to no avail"). Since Mutual's interest was properly perfected under applicable non-UCC law, the interest had value which was entitled to adequate protection pursuant to § 363(e). Under § 363(o)(1), the debtor bore the burden of proof on the issue of adequate protection. The record contains

---

**8.** The reasoning for this conclusion is articulated in *In re Tucson Industrial Partners*, 129 B.R. 614, 623–625 (9th Cir. BAP 1991), *vacated as moot*, 990 F.2d 1099 (9th Cir.1993).

no evidence that such protection was offered, and the trial court correctly denied the debtor use of the cash collateral.

### III. *IS THE DEBTOR ENTITLED TO ATTORNEY FEES?*

The debtor seeks attorney fees on appeal pursuant to A.R.S. § 12–341.01 (West 1992). It contends such an award is appropriate "since the matter arises out of the Assignment of Rents." The statute referred to permits the court, in its discretion, to award attorney fees to the successful party in an action arising out of a contract. Since the debtor is not the successful party, the statute is inapplicable.

### CONCLUSION

Mutual obtained an interest in the rents upon execution of the Assignment which it perfected by recording the Assignment. The prepetition rents collected by the debtor constitute cash collateral. The record does not establish that the debtor offered Mutual adequate protection for its interest in the rents. The bankruptcy judge did not err in denying the debtor the use of those funds, and requiring their sequestration. The decision below is AFFIRMED.