253 P.2d 347

**ROBINSON et al. v. HERRING et al.**

No. 5615.

Supreme Court of Arizona.

Feb. 16, 1953.

Richey & Herring, of Tucson, for appellees.

PHELPS, Justice.

This is an appeal from a judgment of the superior court of Pima County in favor of plaintiffs-appellees, Norman Herring and wife, and against defendants-appellants Paul Robinson and wife. For convenience they will hereinafter be referred to as plaintiffs and defendants.

The facts are that plaintiffs were at all times hereinafter mentioned the owners of a certain residence in Tucson, Arizona; that during the early part of June, 1951, defendants began negotiations for the lease of such residence from plaintiffs and on June 14 called at the office of Mr. Herring in that city and agreed with plaintiffs upon the terms of a lease of said premises for a period of one year from July 1, 1951. The plaintiffs thereupon drew up a lease contract in conformity with such agreement, signed it and handed it to defendants. The lease agreement provided among other things for the payment of $250 cash upon the execution of the lease, receipt of which was therein acknowledged, such payment being for the first and last months' rent. The remaining payments were to be made $125 on the first day of August, 1951, and $125 on the first of each and every month thereafter until the full sum of $1500 had been paid.

Defendants took both copies of the lease and after stating that since the lease re-

Wright, Goddard, Hamilton, Moorehead & Morse, Tucson (Samuel P. Goddard, Jr., Tucson, of counsel), for appellants.

quired them to maintain the cooler and the furnace that they would have to have their man who knew about such things, inspect it. Defendants neither signed the lease then nor paid plaintiffs the $250 provided by the terms of the lease to be paid upon its execution.

Both plaintiffs and defendants testified to these facts. Mr. Herring said he expected defendants to then and there sign the lease and pay the $250 and that he was "flabbergasted" when they took both copies of the lease and walked out of the office without doing either. Some ten days after June 15 Mr. Herring phoned Mr. Robinson and asked that he return the lease duly signed and pay the $250 but heard nothing from the defendants thereafter until the night of July 2 when Mr. Herring again phoned Mr. Robinson and informed him that since he had not told plaintiffs whether he was going to accept the lease, whether he had inspected the cooler and the furnace or anything else, that plaintiffs were then and there withdrawing the written offer contained in the written lease which had been previously given to him.

The following day Mr. Robinson brought the lease to plaintiffs' office signed by him on that date together with a cashier's check for $250 provided by the lease to be paid upon the execution thereof. Mr. Robinson stated upon the witness stand that he observed from reading the lease that the $250 was to be paid under its terms when the lease was executed and that Mr.

Herring had acknowledged receipt of the $250 in the lease which precluded any particular rush on his part to make the payment. The reasonable inference to be drawn from that statement seems to be that since the $250 was not due until the lease was executed he had bided his time about executing the lease. He further testified that when he left Mr. Herring's office the only reservation in his mind was that he "was going to check the place out there and see if it were satisfactory."

Appellants present five assignments of error for our consideration, assignments 2 and 3 of which are based upon the court's memorandum opinion. We have frequently held that the memorandum opinion of the trial judge is no part of the record on appeal and therefore cannot form the basis for error. Ollason v. Glasscock, 26 Ariz. 193, 224 P. 284; Haynie v. Taylor, 69 Ariz. 339, 213 P.2d 684.

Assignment No. 1 asserts that the court erred in permitting plaintiff to introduce parol evidence tending to show a "conditional delivery" of the lease in question after defendants had gone into possession. An examination of the record discloses that neither counsel for plaintiffs nor the court considered the question of "conditional delivery" to be an issue in the case. Counsel took the view and was sustained by the court apparently that there was no delivery of the lease at all; that it never was the intention of plaintiffs to part with control over the premises until the lease was exe-

cuted and the cash payment of $250 made by defendant and that it was not the intention of the defendants to accept the lease until they had inspected the residence and had had their man inspect the cooler and the furnace which the lease provided defendants should maintain.

Defendants contend they moved into the premises on June 16 or 18 and had the gas and electricity cut on but they did not inform plaintiffs of that fact and they both immediately left the city. Neither did they report to plaintiffs that the residence was satisfactory or that they would accept the terms of the lease relative to maintaining the cooler and the furnace, nor did they sign the lease or pay the cash payment. Defendants cite Munford v. Humphreys, 68 Cal.App. 530, 229 P. 860 which held that where lessees were in possession of certain premises and were notified by the owner that the rental would be increased on a date certain and if they wished to continue their lease, to prepare a written lease embodying the increased rental, which they did and returned it to the owner who signed and returned the same to the lessees. The lessees never signed the lease but did pay the increase in rent for about three months and then notified the owner they were moving out. The court held under the circumstances their signatures were not necessary to bind them on the written contract. This is certainly a correct pronouncement of the law but is not authority for defendants'

position in the instant case. The facts and circumstances are entirely different.

In Jarrett v. Norton, 66 Cal.App. 281, 225 P. 868, also cited by defendants, the lease was signed by both parties but by a collateral oral agreement between the parties the lease was not to be delivered until the cash payment provided therein was made. The lessee went into possession and farmed the premises for months. The court held in that case where it was shown that the lessee had produced a number of crops of alfalfa and sold them with the owner's consent that there was a waiver of delivery of the lease on the part of the owner. And in Chovin v. Miranda, 18 Cal.App.2d 193, 63 P.2d 845, where the lease agreement was never physically delivered because of an understanding between lessor and lessee that it was not to be delivered until the cash payment of $1600 was made by the lessee, the court said that the retention of the lease was not conclusive evidence of its non-delivery if the retention was with the consent of the lessee and held in that case it was with his consent and that the lease must be considered as having been delivered.

None of the above cases sustain defendants' position in this case as the facts are entirely different. As to whether the delivery of an instrument whether it be a deed or contract of lease is actually made, is always a question of fact and must be determined by the circumstances of each case.

170

Plaintiffs cite the case of Parker v. Gentry, 62 Ariz. 115, 154 P.2d 517, in support of their contention that parole evidence is always admissible to prove delivery or non-delivery of a deed, and in that case the court said whether a deed is delivered or not may be proved by parole evidence. This we said did not have the effect of varying the terms of the written instrument. We further said, to constitute a delivery, there must be not only a delivery but an acceptance and it must appear that the grantor's intention at the time was that the deed should pass title and that he should lose all control over the property conveyed by the terms thereof. We think this rule applies equally to a lease.

In Brown v. First Nat. Bank of Nogales, 44 Ariz. 189, 36 P.2d 174, also cited by plaintiffs, where a doctor assigned his claim against the estate of a deceased person for whom he had rendered professional services, to secure an indebtedness due the bank, it was held not error to admit parole testimony to show that the bank refused to accept the assignment or to file a claim against the estate to show a lack of delivery and that it did not tend to violate the terms of the instrument itself. In Rothney v. Rothney, 41 Cal.App.2d 566, 107 P.2d 294, 296, where a father and son each executed a deed to the other for an undivided one-half interest in a tract of land they jointly owned, being their intention that the survivor should own all the land. Under written instructions which they executed and delivered to their lawyer the deeds were to be held by him and the deed of the one who died first was to be delivered to the survivor. In the trial of an action brought by the administratrix of the estate of the son after his death to have the alleged conveyance to the father set aside on the ground that the deed from her deceased husband to his father was never delivered, the written instructions were admitted in evidence and the court held that no delivery of either deed was ever made, hence no title passed. The court said:

"* * * Delivery is a question of fact which is to be determined from the circumstances surrounding the particular transaction. The intention to pass immediate and irrevocable title to the property interest is the essential fact for consideration. It should be stated that there is a vital distinction between the use of the term delivery, which might simply designate the mere transfer of physical custody or possession of the deed, and the use of the term in legal contemplation as constituting the necessary delivery required for 'execution' of a deed. This distinction must be kept in mind in considering the circumstances presented by this action."

We think the language of the above quotation is peculiarly applicable to the instant case. The evidence discloses (1) that the lease was handed to the defendant with the expectation that it would be then and

there signed and the cash payment made; (2) it was not contemplated that the lease should be taken out of the office until fully executed; (3) it was neither signed nor the cash payment made; (4) it was never intended by plaintiffs that the act of physical delivery of the written lease signed by them had the effect of depriving them of all control over the premises described therein until fully executed and the cash payment made; (5) defendants did not then and there accept the written lease as binding upon them. Mr. Robinson expressly testified upon the witness stand that he wanted to first inspect the premises and wanted his man to inspect the cooler and furnace inasmuch as the lease provided that he should keep them in repair; (6) he never reported to plaintiffs that he had inspected the premises and that they were satisfactory, nor that his man had inspected the cooler and furnace and that he would assume responsibility for their maintenance nor did he sign the lease or mail his check for $250 to cover the cash payment to be made upon execution of the lease until July 3 after plaintiffs had withdrawn their offer to lease; (7) at no time until July 3 did defendants by acts or words intimate to plaintiffs they intended to accept and carry out the terms of the written lease. True, defendant Paul Robinson testified they went into possession on June 16 or 18 but that alone is insufficient to bind plaintiffs on the written contract for a year. Going into possession was an act exclusively for defendants' benefit. At no time did they perform any act for the benefit of the plaintiffs.

 We therefore hold that there was no legal delivery of the lease contract and that there was no acceptance of the offer to lease by defendants. In view of the above disposition of the case the other assignments need not be considered.

Judgment affirmed.

STANFORD, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.