556 P.2d 823

**ROOSEVELT SAVINGS BANK OF the CITY OF NEW YORK,**
**Appellant,**

**v.**

**STATE FARM FIRE & CASUALTY COMPANY, Appellee.**

**No. I CA–CIV 2983.**

Court of Appeals of Arizona,
Division 1,
Department C.

Sept. 21, 1976.

Rehearing Denied Oct. 28, 1976.

Petition for Review Denied Nov. 23, 1976.

Hughes & Hughes, P.C. by Coit I. Hughes, Phoenix, for appellant.

Lewis & Roca by Paul G. Ulrich, Phoenix, for appellee.

## OPINION

FROEB, Judge.

In this case a major fire loss occurred to a vacant single-family residence after mortgage foreclosure proceedings had been concluded. In an action for declaratory judgment, the Roosevelt Savings Bank of the City of New York (referred to here as "the bank") sought to establish its right to recover fire insurance proceeds under a policy issued by State Farm Fire & Casualty Co. (referred to here as "State Farm"). The trial court decided the issues adversely to the bank on cross motions for summary judgment. This appeal followed.

There is no dispute about the facts. Phillip J. Edwards and Margaret Edwards, husband and wife, were the owners of a house which was subject to a mortgage executed by the Edwards to Brokers Mortgage Company and insured by the Federal Housing Administration (F.H.A.). The mortgage, together with the note, was thereafter assigned to the bank. State Farm had issued a fire insurance policy to the Edwards which included a "Lender's Loss Payable Endorsement" providing fire loss protection to the bank in the event of loss. After the Edwards defaulted in payment of their loan, the bank began mortgage foreclosure proceedings on September 13, 1972. The property at or around this time became vacant and remained vacant until a fire occurred on or about April 29, 1973. In the interim, a representative of the bank inspected the house on several occasions and found that it had been broken into and was in need of being cleaned and secured. This was accomplished and the house was secured by sealing the front door and boarding-up the windows and the rear entrance.

The foreclosure proceedings culminated with a judgment of foreclosure, the issuance of a special execution and a sheriff's sale of the property on March 22, 1973. The bank was the successful bidder at the sale and was issued a certificate of sale by the sheriff on the same date. In accord-

ance with F.H.A. regulations, the bank executed an assignment of the certificate of sale and arranged with the sheriff to have the deed issued in the name of the Secretary of Housing and Urban Development (H.U.D.) once the statutory redemption period had run. As there was no redemption, the deed to the property was issued on April 24, 1973, and thereafter forwarded by attorneys for the bank to American Title Insurance Company. After satisfying various title requirements of H.U.D., the title company, on June 14, 1973, recorded the deed and assignment of certificate of sale in the office of the Maricopa County Recorder. On August 27, 1973, the bank learned for the first time that the house had been partially destroyed by fire on or about April 29, 1973. It then submitted a claim of loss to State Farm which was rejected. This suit followed.

State Farm relies on two basic arguments to sustain the trial court's ruling that the bank is not entitled to recover for the fire loss under the Lender's Loss Payable Endorsement of the policy. On close analysis, we find that neither is correct and therefore reverse the judgment.

■ State Farm contends that the bank's interest in the property was extinguished when the sheriff's deed was issued in the name of H.U.D., two days before the fire. Its argument here necessarily relates to transfer of title. State Farm argues that as a matter of law title passed upon the execution of the sheriff's deed, relying principally upon *First National Bank v. Maxey*, 34 Ariz. 438, 272 P. 641 (1928). We disagree. The *Maxey* case stops well short of reaching the fact situation here. When the bank purchased the property at the sheriff's sale, it acquired equitable ownership of the property, subject only to defeasance by redemption (which did not occur). In accordance with F.H.A. regulations and the executed assignment of the sheriff's certificate of sale, the deed was issued in the name of H.U.D. and was forwarded to American Title Insurance Company to be recorded

and delivered only after marketable title was established and insured. The deed was thus held by the title company in escrow, together with the assignment of certificate of sale, until it was recorded on June 14, 1973.

■ Under Arizona law, a deed to real property does not vest legal title in the grantee until it is delivered and accepted. *Robinson v. Herring*, 75 Ariz. 166, 253 P. 2d 347 (1953); *Parker v. Gentry*, 62 Ariz. 115, 154 P.2d 517 (1944); A.R.S. § 33–401(A). Execution of the deed without delivery is legally insufficient to transfer title. In this case, the delivery and acceptance by H.U.D. did not occur until at least June 14, 1973, when the deed was recorded by the title company. Until then, title to the property remained with the bank. As a consequence, the bank still had an insured interest in the property when the fire occurred on April 29, 1973, and could recover for the fire loss under the policy.

The second question raised by State Farm relates to whether vacancy of the property for an extended period prevents the bank from recovery under the policy. For this, we need to look closer at the provisions of the policy

Terms suspending or restricting coverage state in part:

> . . . Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring
>
> (a) while the hazard is increased by any means within the control or knowledge of the insured; or
>
> (b) *while a described building, whether intended for* occupancy by owner or tenant, *is vacant or unoccupied beyond a period of sixty consecutive days*; . . . (Emphasis supplied.)

However, Paragraphs 1 and 2 of the Lender's Loss Payable Endorsement reads:

> 1. Loss or damage, if any, under this policy, shall be paid to the Payee named on the first page of this policy, its successors and assigns, hereinafter referred to as "the Lender", in whatever form or

capacity its interests may appear . . .

2. The insurance under this policy, . . . as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: . . . (c) by any breach of warranty, act, omission, neglect, or noncompliance with any of the provisions of this policy, . . . by the named insured, the borrower, mortgagor, [etc.] . . . or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, . . . which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

It is State Farm's argument that since the property was vacant for a period of more than 60 days before the fire, there is no coverage for the loss.

As we have stated, the property had been abandoned by the owners from the time foreclosure proceedings began in September, 1972. During this period, agents of the bank had taken steps to clean the property and to secure it against waste, although no receiver was appointed and it did not become the equitable owner of the property until the foreclosure sale in March of 1973, or the legal owner until the deed was delivered in June, 1973.

■ State Farm contends that because the bank was aware of the extended vacancy and did nothing about it (such as seeking appointment of a receiver), it cannot rely upon the protection of the Lender's Loss Payable Endorsement. We think this is refuted however, by the language of Paragraph 2 itself, where it states that the lender is not jeopardized by the acts or omissions of the owner. Even conceding knowledge of the extended vacancy, the bank owed no duty to State Farm to seek a receiver or end the vacancy.

■ Next, State Farm argues that by becoming the owner of the property, the bank is bound by those provisions of the policy affecting an owner and lost the benefit of those provisions protecting it as a lender. It argues the extended vacancy prevents coverage for the loss. To accept this argument we would have to assume that, when the bank purchased the property at the foreclosure sale, the acts and omissions of the Edwards as predecessors in ownership became attributable to the bank in its succeeding ownership.[1] However, this is contrary to the provisions of the policy quoted above, giving protection to the lender regardless of the acts of the owners. Furthermore, State Farm has not referred us to any legal precedent which supports such a position. The cases relied upon by State Farm to support its argument involve distinguishable fact situations and different policy provisions. See, *Hartford Fire Insurance Co. v. Aaron,* 226 Ala. 430, 147 So. 628 (1933); *Trepanier v. Mercantile Insurance Co. of America,* 88 N.H. 118, 184 A. 866, aff'd, 88 N.H. 118, 185 A. 656 (1936); *Smith v. Germania Fire Insurance Co. of New York,* 102 Or. 569, 202 P. 1088 (1922).

A related argument is also presented by State Farm dealing with the provision appearing at the end of Paragraph 2 of the endorsement which states that the lender will lose protection of the endorsement by reason of "acts or omissions of the lender while exercising active control and management of the property." State Farm's position here is that the vacant condition of the property during the foreclosure proceedings was an act or omission occurring while the bank exercised "active management and control" of the premises, refer-

---

1. We are not dealing here with a 60-day vacancy period which began to run after the bank became the equitable owner, since the bank purchased the property at the foreclosure sale on March 22 and the fire occurred some 38 days later on April 29.

**526**

ring to the cleaning of the inside and the boarding-up of doors and windows.

■■ In Arizona the owner-mortgagor, not the mortgagee, is entitled to possession of the mortgaged property pending foreclosure proceedings unless a receiver is appointed. *Dart v. Western Savings and Loan Association,* 103 Ariz. 170, 438 P.2d 407 (1968). As no receiver was appointed here, the bank was not entitled to possession of the property and did not physically assume it. We cannot conclude that by cleaning and boarding-up the doors and windows the bank exercised "active control and management of the property" as that term is used in Paragraph 2 of the Lender's Loss Payable Endorsement. Absent this, the continued vacancy of the property prior to the foreclosure sale cannot be attributed to the bank and the exclusion of coverage appearing at the end of Paragraph 2 of the endorsement is not operative.

■ For the foregoing reasons, we reverse the judgment of the trial court in favor of State Farm. In doing so, we have also examined the record pertaining to the bank's cross motion for summary judgment which was denied by the trial court. Although no appeal is authorized from an order denying a motion for summary judgment, it is appropriate in a case such as this to determine if the motion can be decided as a matter of law, and, if so, to rule thereon and direct that judgment be entered accordingly by the trial court.

As stated earlier, there was no genuine issue of material fact produced in the trial court as to the motion of State Farm. Likewise, in reviewing the record, we see that the same is true as to the motion of the bank. Since the legal issues are identical, we conclude that the bank was entitled to judgment on its motion for summary judgment and direct the court to enter judgment determining that the bank is covered for the fire loss.

Reversed and remanded with directions.

HAIRE, C. J., and EUBANK, J., concur.