**In re Denise Michelle BENSON, Debtor.**

**Capital Realty Services, LLC, Movant,**

v.

**Denise Michelle Benson, Respondent.**

**No. 03–00360–PHX–RJH.**

United States Bankruptcy Court, D. Arizona.

May 21, 2003.

Donald W. Powell, Carmichael & Powell, P.C., Phoenix, AZ, for Debtor.

Howard C. Meyers, Burch & Cracchiolo, P.A., Phoenix, AZ, for Capital Realty Services, LLC.

## OPINION DENYING MOTION FOR RELIEF FROM STAY

RANDOLPH J. HAINES, Bankruptcy Judge.

When is a trustee's sale complete?

The issue is whether the automatic stay prevents the payment of the bid price by the successful bidder at a trustee's sale, when the bankruptcy case is filed after the fall of the hammer at the trustee's sale but prior to payment of the bid price. If the automatic stay does prevent payment of the bid price, does that mean the Debtor's residence was not "sold" for purposes of Bankruptcy Code § 1322(c)(1),[1] so the Chapter 13 debtor still retains an opportunity to cure the default? Based primarily on the language and structure of Arizona's deed of trust statute, this Court answers both of those questions in the affirmative.

### Facts

Secured creditor Susan Naifeh is the holder of the beneficial interest under a deed of trust recorded against the principal residence of Denise Benson (hereafter "Debtor"). A trustee's sale was noticed for and held on January 8, 2003. The high bidder at that sale was not the secured creditor but rather a third party purchaser, Capital Realty Services, LLC ("Capital"), for a bid of $63,531.53.[2] At the time of the sale, Capital provided the trustee under the deed of trust a $1,000 deposit, as required by Arizona law.

---

**1.** Except as otherwise noted, all statutory citations are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330.

**2.** Debtor claims the property is worth $110,000 and there are no other liens against it.

Denise Benson filed her Chapter 13 case around 9:15 a.m. the next day, January 9, 2003. Capital paid the bid price before 5:00 p.m. that same day, but after the filing of the bankruptcy case. Capital made this payment in the time and manner required by Arizona law, by depositing with the trustee a cashiers check for the amount bid. Because the trustee had been informed of the filing of the bankruptcy case, however, the trustee did not issue a trustee's deed and has held Capital's funds in escrow.

Capital has moved for stay relief, under both §§ 362(d)(1) and (d)(2), asserting that the Debtor has no interest in the property because the trustee's sale was completed when the hammer fell. Capital also argues that § 1322(c)(1) terminates Debtor's right to cure because the Debtor's principal residence was "sold" within the meaning of that statute.

Debtor argues the sale was not complete when the bankruptcy case was filed, because the bid price had not yet been paid. Debtor further argues that because the sale was not complete when the bankruptcy was filed, she still has an opportunity to cure the defaults under her Chapter 13 plan, pursuant to §§ 1322(b)(5) and (c)(1).

## Arizona's Trustee's Sale Statutes

In Arizona, security for debts secured by real property can be documented either as a mortgage or a deed of trust. The principal difference is in the foreclosure process.[3] The deed of trust is frequently used instead of a mortgage because its foreclosure process is generally simpler, cheaper and quicker.

Foreclosure of a mortgage requires the filing of a lawsuit, Arizona Revised Statutes § 33–721,[4] and obtaining a foreclosure judgment that provides for the county sheriff to sell the property under special execution. A.R.S. § 33–725(B). A trustee's sale under a deed of trust, however, does not require any judicial action and the private trustee's sale may be held after the expiration of 90 days from the recording of the notice of sale. A.R.S. § 33–807(A), (B), & (D).

There is also a significant distinction in the debtor's redemption rights. In a mortgage foreclosure, if the debt is accelerated upon or prior to the filing of the complaint, nothing in the statute permits a cure and reinstatement of the installment terms, and after the foreclosure judgment the mortgagor can redeem only by paying the full amount of the judgment. A.R.S. § 33–726. But even after the special execution sale, a debtor has up to six months to redeem. A.R.S. §§ 12–1281 to 12–1283.[5] There is no court hearing or judi-

---

3. Strictly speaking, a trustee's sale is not a "foreclosure" of the deed of trust. Arizona statutes refer to the trustee's sale as the exercise of "a power of sale [that] is conferred upon the trustee of a trust deed." A.R.S. § 33–807(A). This is distinct from a "foreclosure," because the beneficiary of a deed of trust also has the option to "foreclose" it "in the manner provided by law for the foreclosure of mortgages on real property." *Id.* Nonetheless, practitioners commonly refer to a trustee's sale as being a "foreclosure" of the deed of trust, and the alternative for a true judicial foreclosure of a deed of trust is almost never used.

4. Arizona Revised Statutes hereinafter abbreviated as "A.R.S."

5. This period may be shortened to 30 days if the foreclosure judgment determines that the property was abandoned and not used primarily for agricultural or grazing purposes. A.R.S. § 12–1282(A). The redemption right may also be lost if the debtor seeks a post-sale hearing to determine the value of the property sold, which may be sought to reduce the amount of a deficiency judgment in cases where there may be liability for the deficiency. A.R.S. § 12–1566(C). These provisions are incorporated into the mortgage foreclosure statutes by A.R.S. § 33–725(B). The re-

cial confirmation required after such a sheriff's sale, as there is in some states. *Colvin v. Weigold,* 31 Ariz. 370, 376–77, 253 P. 633 (1927).

Under a trustee's sale procedure, however, the trustor has the right to reinstate (not "redeem") the debt by 5:00 p.m. on the day before the trustee's sale by paying the amount then due without acceleration. A.R.S. § 33–813(A) & (B). There is no right of redemption after the property has been conveyed following a trustee's sale. A.R.S. § 33–811(E).

### Trustee's Sales Are Complete Only When the Bid Price is Paid

■ The statutory detail of the trustee's sale procedure fairly clearly indicates that the sale is not complete until the bid price is paid.[6] A.R.S. § 33–810(A) provides:

> The sale shall be completed on payments by the purchaser of the price bid in a form satisfactory to the trustee. The subsequent execution, delivery and recordation of the trustee's deed as prescribed by § 33–811 are ministerial acts. If the trustee's deed is recorded in the county in which the trust property is located within fifteen business days after the date of the sale, the trustee's sale is deemed perfected at the appointed date and time of the trustee's sale.

There are at least two negative implications from those statutory provisions. First, the fact that the sale is deemed "completed on payment by the purchaser of the price bid" implies that the sale is not completed until such payment. Second, designating the subsequent delivery and recordation of the trustee's deed as "ministerial acts" creates the negative implication that the payment of the bid price is

not a ministerial act, which implies that it is an essential part of the sale process. This agrees with common sense.

There is a contrary implication in that language, in that the subsequent recordation of the trustee's deed within fifteen days is deemed to have effect retroactive to the date and time of the trustee's sale, rather than to the date and time of the payment of the bid price. That could be read to imply the statute deems the sale complete on the fall of the hammer rather than on payment of the bid price. On the other hand, the date and time of the sale rather than the payment of the bid price may have been selected for the effective date because there will usually be a public record of the former, because it is required by A.R.S. § 33–808(A)(1) that such date and time be recorded, whereas there is no recording of the date and time when the bid price is paid. Indeed, the affidavits filed in this case suggest that the parties were unable to pin down precisely the time of the payment of the bid price, although they agree that it was after 9:15 a.m. when the bankruptcy case was filed and prior to the 5:00 p.m. statutory deadline for the payment.

The statutes also imply that payment of the bid price is necessary to completion of the sale because of what they provide in the event the bid price is not paid. The statute permits a bidder to provide only a $1,000 deposit at the time of sale, in which event the balance of the bid price must be paid by 5:00 p.m. on the following business day. A.R.S. §§ 33–810(A) & 33–811(A). If the bid price is not then paid, the trustee may, in the trustee's discretion, "either continue the sale to reopen bidding or

---

ᵇ demption rights run from "the date of the sale," A.R.S. § 12–1282(A) & (B), and there is no language similar to that in the deed of trust statutes specifying that the sale is "complete" upon payment of the bid price.

**6.** There is no Arizona case law defining when the trustee's sale is complete. ·

immediately offer the trust property to the second highest bidder." A.R.S. § 33–811(A). The fact that the trustee has the option to "continue the sale to reopen the bidding" implies that the sale has not yet been completed simply because the hammer fell at the auction. The statute does not require a new sale, but rather that the pending sale be "continued," which means that it was not completed.

In addition to the relation-back argument based upon A.R.S. § 33–810(A) discussed above, Capital also argues that there is a relation-back concept in A.R.S. § 33–811(E), that also implies that the sale was complete upon the fall of the hammer. A.R.S. § 33–811(E) provides:

> The trustee's deed [which § 33–811(B) requires the trustee to issue within seven business days after payment of the bid price] shall operate to convey to the purchaser the title, interest and claim of the trustee, the trustor, the beneficiary, their respective successors in interest and all persons claiming the trust property sold by or through them, including all interest or claim in the trust property acquired subsequent to the recording of the deed of trust and prior to delivery of the trustee's deed. That conveyance shall be absolute without right of redemption and clear of all liens, claims or interests that have a priority subordinate to the deed of trust and shall be subject to all liens, claims or interests that have a priority senior to the deed of trust.

In fact, however, the implications of that statutory provision favor the Debtor rather than Capital. While it is true there is no right of redemption after a trustee's sale, this statutory provision actually provides that the cutoff of the right of redemption occurs upon the delivery of the trustee's deed, rather than upon the fall of the hammer. That conclusion is reinforced by the specification of what intervening liens and other interests are foreclosed by the trustee's sale. The statute provides that the intervening liens that are foreclosed are those arising "prior to delivery of the trustee's deed," rather than only those prior to the date and time of the trustee's sale. That implies that the sale is not deemed complete, the deed of trust foreclosed, and title passed to the high bidder until the delivery of the trustee's deed. This is consistent with the common law notion that title passes upon delivery of the deed, rather than upon the earlier payment of the purchase price or the later recordation of the deed.[7]

### Effect of § 1322(c)(1)

Both parties have also made arguments based on § 1322(c)(1), which provides that a Chapter 13 plan may cure a default in a debt secured by the Debtor's residence "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." It is at least theoretically possible, and probably some courts have concluded, that this statute implies a federal rule for determining when a residence is "sold" at a foreclosure sale. The leading treatise on Chapter 13 has fifteen pages of footnotes listing cases construing the meaning of "sold at a foreclosure sale." 2 KEITH M. LUNDIN,

---

7. *See* A.R.S. § 33–401(A)("No estate of inheritance, freehold, or for a term of more than one year, in lands or tenements, shall be conveyed unless the conveyance is by an instrument in writing, subscribed *and delivered* by the party disposing of the estate, or by his agent thereunto authorized by writing.")(emphasis added); *Roosevelt Sav. Bank of City of*

*New York v. State Farm Fire & Cas. Co.,* 27 Ariz.App. 522, 524, 556 P.2d 823, 825 (App. Div. One 1976)("Under Arizona law, a deed to real property does not vest legal title in the grantee until it is delivered and accepted. [citations omitted] Execution of the deed without delivery is legally insufficient to transfer title.").

CHAPTER 13 BANKRUPTCY § 130.1, at 130–13 through 130–28 (3d ed.2002).

This plethora of cases demonstrates that the statute contains an ambiguity. In particular, it is introduced by the clause, "Notwithstanding ... applicable nonbankruptcy law," which leaves ambiguous what nonbankruptcy law is to be disregarded: is it state laws defining the right to cure, or is it state law defining when property is deemed "sold at a foreclosure sale"?

■ The legislative history clarifies this ambiguity to some extent. The statute was drafted in response to *In re Roach,* 824 F.2d 1370 (3d Cir.1987), which held that a debtor's right to cure was extinguished at the time of a foreclosure judgment which, under the applicable state law, occurred in advance of a foreclosure sale. Therefore the purpose of the new language was to *extend* the debtor's right to cure *at least* up until the foreclosure sale was held, even if state law terminated that cure right earlier. LUNDIN, *supra,* at 130–10 to 130–11 (quoting 140 CONG. REC. H10, 769; 140 CONG. REC. S14, 462; and 140 CONG. REC. H10, 771). It is not at all unusual for the Bankruptcy Code to disregard state law cure rights, because the Bankruptcy Code frequently provides federal cure rights that do not exist under state law, and may exist notwithstanding state law. *See, e.g., Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.),* 314 F.3d 1070 (9th Cir.2002), *cert. denied* —— U.S. ——, 123 S.Ct. 2097, 155 L.Ed.2d 1065, 2003 WL 1869955 (2003); *Great W. Bank & Trust v. Entz– White Lumber & Supply, Inc. (In re Entz–White Lumber & Supply, Inc.),* 850 F.2d 1338 (9th Cir.1988); *Bank of America v. Garcia (In re Garcia),* 276 B.R. 627 (Bankr.D.Ariz.2002).

■ But state law may still be consulted to determine when the trustee's sale is deemed complete. That is the analysis the Court adopts here, generally in accord with the method of analysis in *Colon v. Option One Mortgage Corp.,* 319 F.3d 912 (7th Cir.2003). But while the method of analysis is similar the facts are different, because this Court finds the payment of the bid price is essential to completion of the trustee's sale, under an Arizona state law analysis, unlike the more ministerial acts such as recordation of the deed or judicial confirmation of the sale. *Cf., In re Bobo,* 246 B.R. 453 (Bankr.D.D.C.2000); *Homeside Lending, Inc. v. Denny (In re Denny),* 242 B.R. 593 (Bankr.D.Md.1999). Thus the Debtor's right to cure a default in a principal residence deed of trust will exist *at least* up until completion of the trustee's sale, as determined by state law, notwithstanding any state law that might terminate that cure right earlier. For example, under Arizona law a debt secured by a mortgage may be irrevocably accelerated upon the filing of the mortgage foreclosure suit, but § 1322(c)(1) would permit a Chapter 13 plan to cure such default and therefore reinstate the mortgage debt so long as the case was filed before the foreclosure sale was completed, which may be months after the mortgage foreclosure suit was commenced.

This interpretation of § 1322(c)(1) also applies to trustee's sales, albeit for a much shorter time frame. Under A.R.S. § 33–813, the debtor's right to reinstate expires at 5:00 p.m. on the day before a scheduled trustee's sale. But if a bankruptcy case is filed after that time and before completion of the sale, § 1322(c)(1) preserves the debtor's right to cure. The Arizona statute does not expressly provide that a new right to cure becomes available when the trustee's sale is continued to a later date, although that may be how most practitioners interpret the statute. But in any event § 1322(c)(1) would extend such cure right at least until the sale is completed for state

law purposes, which the Court here concludes requires payment of the bid price (and *possibly* delivery of the trustee's deed). And because there is no redemption right under Arizona law *after* completion of a trustee's sale, we need not reach the more difficult question of whether § 1322(c)(1) could ever terminate a cure right earlier than state law would permit.[8]

### Effect of *Steiner*

Both parties make arguments based on this Court's previous opinion in *LR Partners, L.L.C. v. Steiner (In re Steiner)*, 251 B.R. 137 (Bankr.D.Ariz.2000). In that case, the trustee's sale had been held on April 17, the bid price was paid on April 18, and the trustee's deed was executed and delivered on April 24, significantly prior to the filing of the bankruptcy case on May 1. The issue in *Steiner* arose from the fact that although the bid price had been paid and the trustee's deed executed and delivered, the trustee's deed was not recorded until May 2. *Steiner* did not raise an issue as to whether the trustee's sale had been completed, because as noted above A.R.S. § 33–810 expressly provides that "the sale shall be completed on payment by the purchaser of the price bid," which had occurred long before the bankruptcy case. Rather, the issue in *Steiner* was whether the debtor could avoid the completed sale using the strong-arm powers of § 544, which were available to the Chapter 13 debtor pursuant to § 522(h), because the completed conveyance had not been recorded prior to the bankruptcy. This Court concluded that there could be

no hypothetical bonafide purchaser whose rights would trump those of the purchaser at the trustee's sale, both because the recorded notice of sale was constructive notice to the world of the pendency of the sale, and because the perfection of the purchaser's title is effectively made retroactive to the date of the sale.

*Steiner* is not controlling here for at least two significant reasons. First, we are not here concerned with the rights of a hypothetical intervening bonafide purchaser, but rather we must determine when the sale is deemed complete as between the parties. Second, and more important, in *Steiner* the bid price had been paid and the trustee's deed executed and delivered before the bankruptcy case, whereas in this case not even the bid price had been paid. Because of these distinguishing facts, *Steiner* is not controlling here.

### Effect of the Automatic Stay

Based on this analysis, the Court concludes that a trustee's sale is not complete until the bid price is paid. That leaves the question of what is the status of the sale here, when in fact the bid price was paid albeit subsequent to the filing of the bankruptcy.

If, as concluded here, payment of the bid price is necessary for the high bidder to conclude his purchase of the property, then payment of the bid price must be regarded as an "act to obtain possession of property of the estate." Consequently payment of the bid price, unlike recorda-

---

**8.** This question may arise after a judicial mortgage foreclosure sale. As noted above, debtors generally have six months after such a sale in which to redeem, but they have no right under state law to cure the default and reinstate the mortgage during that time. It could be argued that the foreclosure sale is deemed to be complete, under state law, on the date of sale or on payment of the bid price even though the sheriff does not deliver a deed until expiration of the redemption periods. A.R.S. § 12–1286. Does § 1322(c)(1) nevertheless create a cure and reinstatement right during this period? *Colon* does not appear to answer that question, but instead assumes it will not often arise under the Illinois procedures. 319 F.3d at 920. Similarly we need not answer it here, and it may never arise due to the infrequent use of residential mortgages in Arizona.

tion of a trustee's deed, is not merely a ministerial act that preserves the status quo or only gives the world notice of what has occurred, but rather is an act of legal substance that changes the relationship of the parties and effectively removes property from property of the estate. Consequently payment of the bid price after the bankruptcy petition is filed violates the automatic stay pursuant to § 362(a)(3).

In the Ninth Circuit, acts in violation of the stay are not merely voidable, but are void. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569 (9th Cir. 1992). Because the payment of the bid price must be regarded as legally void, the parties must be in the same posture as if the high bidder simply failed to show up by 5:00 p.m. the day after the sale to pay the bid price. Therefore the trustee has the discretion either to continue the sale to reopen the bidding or to immediately offer the trust property to the second highest bidder (presumably the secured creditor, who presumably opened the bidding with a credit bid equal to the debt), pursuant to A.R.S. § 33–811(A). But offering the property to the second highest bidder, and certainly such bidder's payment of the bid price, would equally be subject to the automatic stay. Consequently until there is relief from the automatic stay or it terminates of its own accord, the only options available to the trustee are to continue the sale or cancel it. Under Ninth Circuit law, continuance of a trustee's sale is not a violation of the automatic stay. *First Nat'l Bank of Anchorage v. Roach (In re Roach)*, 660 F.2d 1316 (9th Cir.1981).

Because the sale has not been completed and must be continued, the Debtor and her secured creditor are effectively in the same position as the much more common situation where a bankruptcy case is filed after a trustee's sale has been noticed and before it is held. Debtor still owns her property, and it is still subject to a secured debt owed to Susan Naifeh.

A.R.S. § 33–810(A) provides that: "Every bid shall be deemed an irrevocable offer until the sale is completed, except that a subsequent bid by the same bidder for a higher amount shall cancel that bidder's lower bid." After sentences concerning how to determine which is the highest bid, that same statutory paragraph continues: "The sale shall be completed on payment by the purchaser of the price bid in a form satisfactory to the trustee."

That statute means that Capital has made an offer to purchase the property for the amount of the high bid, and that offer is irrevocable until the sale is completed.[9] As a mere offeror to purchase the Debtor's property, Capital does not have an ownership interest in the Debtor's property nor a lien against it. Consequently Capital does not have standing to seek relief from the automatic stay.

### Conclusion

For the foregoing reasons, Capital's Motion for Relief From the Stay is denied.

---

9. This statement is made only to elucidate Capital's position vis-à-vis the Debtor and property of the estate, not to determine the rights as between the secured creditor, the trustee and the high bidder. Thus, for example, this Court is not determining whether the secured creditor or the trustee can hold the high bidder to his bid under the present facts. Bidders at trustee's sales can largely avoid the risks of the result here by coming prepared to pay the bid price immediately upon the fall of the hammer rather than the next day.