NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In the Matter of the Estate of:

VIRGINIA G. MYRMAN, *Decedent*.

LADIEN A. STEELMAN, as Trustee of THE MYRMAN LIVING TRUST
DATED MAY 16, 1994; LADIEN A. STEELMAN, as Personal
Representative of THE ESTATE OF EARL D. MYRMAN; and LADIEN A.
STEELMAN, as Personal Representative of THE ESTATE OF VIRGINIA
G. MYRMAN, *Plaintiff/Appellant*,

*v.*

U.S. BANK NATIONAL ASSOCIATION; and FIRST AMERICAN TITLE
INSURANCE COMPANY, *Defendants/Appellees*.

No. 1 CA-CV 15-0208
FILED 6-14-2016
AMENDED PER ORDER FILED 6-14-16

Appeal from the Superior Court in Maricopa County
No. PB2013-091530
The Honorable Terri L. Clarke, Judge *Pro Tempore*

**AFFIRMED IN PART, VACATED IN PART**

COUNSEL

James E. Bache PC, Mesa
By James E. Bache
*Counsel for Plaintiff/Appellant*

Dickinson Wright, PLLC, Phoenix
By Michael J. Plati
*Counsel for Defendant/Appellee U.S. Bank National Association*

Lake & Cobb PLC, Tempe
By Richard L. Cobb, Joseph J. Glenn
*Counsel for Defendant/Appellee First American Title Insurance Company*

---

## MEMORANDUM DECISION

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Randall M. Howe joined.

---

**G O U L D**, Judge:

**¶1**        Appellant LaDien Steelman, as trustee of the Myrman Living Trust Dated May 16, 1994 (the "Trust") and as personal representative of the estates of her parents, Earl D. Myrman and Virginia D. Myrman, appeals the trial court's grant of summary judgment in favor of US Bank National Association ("US Bank") and First American Title Insurance Company ("First American").  For the reasons set forth below, we affirm the trial court's judgment except for those portions quieting title in favor of US Bank and awarding US Bank attorney's fees under Arizona Revised Statutes ("A.R.S") section 12-1103(B) (2016).

### FACTUAL AND PROCEDURAL BACKGROUND

**¶2**        In 2006, the Myrmans applied for a loan from Downey Savings & Loan, F.A. ("Downey").  The loan was to be secured by a lien against their home.  The home, however, was held by the Myrmans as trustees of the Trust.  Thus, to use the home as security for the loan, the Myrmans, in their capacity as trustees, executed a Quitclaim Deed transferring the property from the Trust to themselves individually as joint tenants.  The Myrmans also signed a Deed of Trust, in their individual capacities, to secure the loan.

**¶3**        The loan was finalized and the funds were disbursed to the Myrmans.  After the closing, the escrow agent recorded the Deed of Trust but did not record the Quitclaim Deed.

2

¶4        The Myrmans stayed current on the loan until July 2011, shortly before Virginia passed away.[1]  By that time, US Bank had acquired Downey's interest in the loan.  In 2012, US Bank discovered the Quitclaim Deed had not been recorded.  US Bank made a claim with its title insurer, First American, and instructed First American to resolve the issue.  First American found a facsimile copy of the Quitclaim Deed and recorded it.

¶5        Following the death of her parents, Steelman became trustee of the Trust and was appointed as personal representative for their estates.  In 2013, Steelman, in her capacity as personal representative, sued herself as trustee of the Trust, seeking to have the Quitclaim Deed declared void.  Neither US Bank nor First American was a party to that lawsuit.  The lawsuit concluded with the entry of a judgment stating that the Quitclaim Deed was void because it did not contain trust-related disclosures as required by A.R.S. § 33-404(B) (2014).

¶6        In August 2013, US Bank started foreclosure proceedings on the Myrmans' home by recording a Notice of Trustee's Sale.  Shortly thereafter, Steelman sued US Bank and First American on behalf of the Trust and the Myrmans' estates, alleging the Quitclaim Deed had been "fraudulently recorded [in 2012] and contained false statements and [was] therefore void and of no effect."  US Bank later counterclaimed to quiet title in its favor.  On Steelman's motion, the trial court issued a preliminary injunction staying the trustee's sale.

¶7        Steelman, US Bank, and First American each moved for summary judgment.  The trial court granted US Bank's and First American's motions, finding the Quitclaim Deed was valid despite Steelman's objections.  The trial court also found the stipulated judgment between the Trust and the Myrmans' estates did not bind US Bank.  The trial court lifted the injunction, quieted title to the property in favor of US Bank, awarded attorney's fees to US Bank under A.R.S. § 12-1103(B), and awarded attorney's fees to First American under A.R.S. § 12-341.01(A).

¶8        Steelman timely appealed, and the parties agreed to reinstate the injunction pending the outcome of this appeal.[2]

---

[1]        Earl passed away in 2008.

[2]        Because the parties stipulated to extend the injunction through this appeal, Steelman's contention that the trial court abused its discretion by lifting the injunction is moot.  We therefore do not address this issue.

## DISCUSSION

**¶9** We review a grant of summary judgment *de novo* to determine whether any genuine issue of material fact exists; we view the evidence and all reasonable inferences in the non-moving parties' favor. *Russell Piccoli P.L.C. v. O'Donnell*, 237 Ariz. 43, 46-47, ¶ 10 (App. 2015). Summary judgment should be granted only "if the facts produced in support of [a] claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim . . . . " *Orme School v. Reeves*, 166 Ariz. 301, 309 (1990).

### I. The Quitclaim Deed Was Valid.

**¶10** Steelman argues US Bank had no authority to notice a trustee's sale. Steelman contends the Myrmans' Quitclaim Deed is void as to US Bank because it was not recorded and, as a result, title to the Myrmans' home was never transferred from the Trust. *See* A.R.S. § 33-412(A) (2014) (providing that conveyances of land "shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder"). Thus, according to Steelman, when the Myrmans signed the Deed of Trust in their individual capacities it had no effect; the Deed of Trust never attached to the property, thereby making US Bank an unsecured creditor.

**¶11** We begin our analysis by emphasizing that US Bank's right to foreclose is not based on the Quitclaim Deed, but on the Deed of Trust. *Steinberger v. McVey*, 234 Ariz. 125, 135, ¶ 26 (App. 2014). Here, the Quitclaim Deed is relevant only insofar as it affected the transfer of the property from the Trust to the Myrmans individually.

**¶12** The Quitclaim Deed was valid. Pursuant to A.R.S. § 33-412 (B), "[u]nrecorded instruments, *as between the parties* and their heirs . . . shall be valid and binding." A.R.S. § 33-412(B) (emphasis added). Therefore, the Quitclaim Deed did not have to be recorded to effect a valid and binding transfer between the parties to the Deed; namely, the Trust and the Myrmans. And because the Quitclaim Deed was valid, when the Myrmans signed the Deed of Trust in their individual capacities, the Deed of Trust attached to the property.

**¶13** We also reject Steelman's argument that A.R.S. § 33-412(A) invalidates the Quitclaim Deed. Steelman argues subsection A applies to US Bank because it is a subsequent purchaser that paid valuable

consideration for the Deed of Trust and was without knowledge of the prior unrecorded Quitclaim Deed. However, even if we assume (as Steelman argues) that US Bank did not know about the Quitclaim Deed until 2012, Steelman's argument is contrary to § 33-412(A)'s clear purpose, which is to *protect* subsequent purchasers' interests, not void them. *See Hall v. World Sav. & Loan Ass'n*, 189 Ariz. 495, 503 (App. 1997).

**¶14** Steelman contends, however, that *Rowe v. Schultz*, 131 Ariz. 536 (App. 1982), supports application of § 33-412(A) to this case. In *Rowe*, the plaintiff obtained a quitclaim deed to certain property but did not record it for five weeks. *Id.* at 537. In the interim, the defendant obtained a money judgment against the original landowner and recorded an abstract of judgment against the property. *Id.* We held that the defendant's recorded abstract created a valid lien against the plaintiff's land, finding that "the judgment lien takes precedence over a prior unrecorded deed . . . unless the judgment creditor has notice thereof." *Id.* at 539 (quoting *McDonald v. Powell Lumber Co.*, 243 S.W.2d 192, 195 (Tex. App. 1951)).

**¶15** *Rowe* is distinguishable from this case. *Rowe* resolved a priority dispute between a judgment lien and an unrecorded deed adverse to the judgment creditor's interest. Here, there is no priority dispute, and the Quitclaim Deed was not adverse to US Bank's position.

**¶16** Finally, we also reject Steelman's contention that the stipulated judgment she obtained in her lawsuit involving the Trust and the Myrmans' estates bars US Bank from litigating the validity of the Quitclaim Deed. US Bank was not a party to the lawsuit, nor were its interests litigated in that lawsuit; therefore, that judgment does not bind it. *Thomas v. Grant*, 222 Ariz. 197, 201, ¶ 12 (App. 2009); *see also Mosley v. Trans Rent-A-Car, Inc.*, 133 Ariz. 274, 276 (App. 1982) (stating that non-parties typically are not bound by the rules of *res judicata*).

**¶17** Additionally, the stipulated judgment was based on the premise the Quitclaim Deed was void because it violated the statute. *See* A.R.S. § 33-404(B) (requiring disclosure of "the names and addresses of the beneficiaries . . . and . . . the trust or other agreement under which the grantor is acting" in any deed or conveyance involving a grantor holding title as a trustee). However, it is undisputed the Myrmans acquired the property from the Trust "for value"; the Quitclaim Deed expressly states the Myrmans paid "consideration of Ten Dollars" to transfer title. As a result, pursuant to A.R.S. § 33-404(F), any failure to make the disclosures A.R.S. § 33-404(B) required did not void the Quitclaim Deed. *See* A.R.S. § 33-404(F) ("If real property or any interest in real property, or any

mortgage, deed of trust or other lien on real property, is acquired for value, the title, interest, mortgage, deed of trust or other lien is not impaired or in any way adversely affected by reason of the failure of any person to comply with the requirements of this section.").

## II.    The Quitclaim Deed Was Delivered.

**¶18**    Steelman next contends the Quitclaim Deed was never "delivered" under A.R.S. § 33-401(A) because it was not recorded; as a result, title to the property was never transferred from the Trust. *See Roosevelt Sav. Bank of City of New York v. State Farm Fire & Cas. Co.*, 27 Ariz. App. 522, 524 (1976) ("Under Arizona law, a deed to real property does not vest legal title in the grantee until it is delivered and accepted.").

**¶19**    No specific procedure or action is required to complete delivery of legal title. *Pass v. Stephens*, 22 Ariz. 461, 468 (1921). Delivery may consist of any action or conduct that "clearly manifests the intention of the grantor and the person to whom it is delivered that the deed shall presently become operative . . . and that the grantor loses all control over it, and that by it the grantee is to become possessed of the estate." *Id*. (quoting *Baker v. Hall*, 73 N.E. 351, 353 (Ill. 1905)). Whether delivery has occurred is dependent on the facts and circumstances of each case. *Robinson v. Herring*, 75 Ariz. 166, 169 (1953).

**¶20**    It is undisputed the Myrmans, individually and as trustees of the Trust, executed the Quitclaim Deed and gave it to the escrow agent for recording. It also is undisputed that after the Myrmans signed the Quitclaim Deed and the Deed of Trust, Downey disbursed the loan funds to the Myrmans, who in turn accepted the funds and made payments on the loan for approximately five years. Thus, based on the parties' conduct, the Quitclaim Deed clearly was delivered and became effective after the Myrmans signed it.

**¶21**    Steelman also argues the escrow agent could not have delivered the Quitclaim Deed until the escrow agent "could comply with the instructions of the new Lender, including, but not limited to, the obtaining of a Policy of Title Insurance . . . covering that certain real property . . . reflecting Title Vested as Follows: Virginia Myrman and Earl D. Myrman, wife and husband as joint tenants." However, escrow did close, regardless of any alleged breach by the escrow agent, and the parties,

by their conduct, acknowledged delivery. Accordingly, the trial court did not err in finding delivery took place under A.R.S. § 33-401(A) and *Pass*.[3]

### III. Neither US Bank nor First American Violated A.R.S. § 33-420(A).

¶22 Steelman contends US Bank is liable for damages under A.R.S. § 33–420(A) for instructing First American to record a "sham" copy of the Quitclaim Deed, and First American is liable under the same statute for recording an "altered" facsimile copy of the Quitclaim Deed. Steelman also argues US Bank is liable under A.R.S. § 33–420(A) for recording the Notice of Trustee's Sale, because it knew the Quitclaim Deed had never been properly recorded and, as a result, the Deed of Trust never attached to the property.

¶23 A.R.S. § 33–420(A) imposes liability on one who records a document asserting an interest in real property while "knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid." *Id.*; *SWC Baseline & Crismon Inv'rs, L.L.C. v. Augusta Ranch Ltd. P'ship*, 228 Ariz. 271, 279-80, ¶ 23 (App. 2011).

¶24 The trial court properly denied Steelman's claim. Steelman did not show the Quitclaim Deed was forged, groundless, or otherwise invalid. As discussed above, the Quitclaim Deed does not contain any material misstatements; the parties intended to have the Trust convey title to the Myrmans so that Downey would fund the loan, and that is exactly what the Quitclaim Deed accomplished. *See SWC*, 228 Ariz. at 281, ¶ 30. In addition, A.R.S. § 33–420(A) does not apply to First American or US Bank: First American did not assert any interest in the property by recording the copy of the Quitclaim Deed, nor did US Bank by instructing First American to do so. *Id.*; *cf. Stauffer v. U.S. Bank Nat'l Ass'n*, 233 Ariz. 22, 26, ¶ 12 (App. 2013) (stating that because substitute trustee held legal title for beneficiary, substitute trustee's recording of notice of trustee's sale fell within the ambit of A.R.S. § 33-420 (A)).

---

3 Steelman also argues that the Quitclaim Deed, having not been "delivered" in 2006, became "void *ab initio*" and "no longer subject to being legally delivered or accepted" in 2012. Based on our analysis above, we need not reach this argument or Steelman's related contention that US Bank's claim was unsecured and time-barred under either A.R.S. § 14-3803(A) or (C).

¶25 Steelman also contends the 2012 recording was improper because First American only recorded "an image of the [Quitclaim Deed] in a facsimile." However, a copy of an instrument can be recorded if it is "sufficiently legible for the recorder to make certified copies from the photographic or micrographic record." A.R.S. § 11-480(A)(2) (2012).

¶26 Steelman contends, however, that First American inserted material misstatements into the Quitclaim Deed by eliminating the identifying header and footer and adding exemption language under A.R.S. § 11-1134(B)(3). A misstatement is only material for purposes of the statute "if a reasonable person would attach importance to its existence or nonexistence in determining [his or her] choice of action in the transaction in question." *Caruthers v. Underhill*, 230 Ariz. 513, 521, ¶ 28 (App. 2012) (internal quotation marks omitted).

¶27 Here, nothing shows that the recorded Quitclaim Deed contained any false or material misstatements. The omitted facsimile header and footer did not change or alter the document in any material way. Likewise, the added statutory exemption language did not contain any misstatement, material or otherwise; First American simply added it to avoid paying the statutory recording fee. *See* A.R.S. § 11-1134(B)(3) (exempting transfer between family members for nominal consideration from recording filing fee).

## IV. First American Did Not Owe Fiduciary Duties to the Trust or the Myrmans' Estates.

¶28 Steelman next contends First American "breached its fiduciary duty to deal fairly with the Myrmans" by recording the facsimile copy of the Quitclaim Deed. Whether a fiduciary duty exists is a question of law we review de novo. *Gerow v. Covill*, 192 Ariz. 9, 17, ¶ 37 (App. 1998).

¶29 Steelman argues First American owed the Trust and the Myrmans' estates a fiduciary duty via a Memorandum of Understanding ("MOU") it entered into with the Maricopa County Recorder's Office regarding electronic filing. Steelman cites one sentence from the MOU stating that "[a]ll parties of the Electronic Recording transaction desire to operate and maintain a secure recording system that safeguards parties to recordation from deceit, fraud and forgery," and contends that the Trust and the Myrmans' estates, as "parties to recordation," may sue First American for violating the MOU's terms.

¶30 Assuming without deciding that the unsigned copy of the MOU was a contract between First American and the Recorder's Office, we

reject Steelman's contention that the Trust and the Myrmans' estates were "members of that class . . . to be protected by the duties created by the MOU." A party is not a third party beneficiary of a contract unless the contract itself evidences a clear intent to benefit that party. *Sherman v. First Am. Title Ins. Co.*, 201 Ariz. 564, 567, ¶ 6 (App. 2002). The language Steelman cites does not confer any direct benefit on the Trust or the Myrmans' estates. At most, taking all inferences in Steelman's favor, the MOU does not support a private cause of action, but merely confers an incidental benefit on Steelman by reducing "deceit, fraud and forgery." *See Tanner Cos. v. Ins. Mktg. Servs., Inc.*, 154 Ariz. 442, 444 (App. 1987) (stating a party may not recover as a third party beneficiary "if it is merely an incidental beneficiary . . . rather than one for whose express benefit the [contract] was executed").

**¶31**       Steelman next contends First American owed a fiduciary duty under *Maxfield v. Martin*, 217 Ariz. 312 (App. 2007). Under *Maxfield*, an escrow agent owes the principals to an escrow two specific fiduciary duties: to comply strictly with the escrow agreement's terms, and to disclose facts that a reasonable escrow agent would perceive as evidence of fraud. *Id.* at 314, ¶ 12. However, these duties do not apply to First American because it was not the escrow agent for the original transaction. Steelman cites no authority holding that either duty stated in *Maxfield* extends to a title insurer under circumstances such as these.

## V.       Granting Leave to Amend to Assert MOU-Specific Claims Would Have Been Futile.

**¶32**       Steelman also argues the trial court should have granted her leave to amend the complaint to assert claims against First American under the MOU. Leave to amend should be liberally granted, *MacCollum v. Perkinson*, 185 Ariz. 179, 185 (App. 1996), but is properly denied in cases of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, or undue prejudice to the opposing party. *Carranza v. Madrigal*, 237 Ariz. 512, 515, ¶ 13 (2015).

**¶33**       We review the decision to deny leave to amend for an abuse of discretion. *Id.* There was no abuse of discretion here because amending the complaint to assert MOU-specific claims would have been futile. As explained above, neither the Trust nor the Myrmans' estates can sue First American for its alleged breaches of the MOU.

**¶34**       Steelman also argues the trial court did not directly address her request for leave to amend. This is true; however, the trial court expressly ruled that any alleged violations of the MOU should "be

9

addressed between those two parties," referring to First American and the Recorder's Office. We may affirm a trial court's ruling if it is correct for any reason, and do so here. *Tumacacori Mission Land Dev., Ltd. v. Union Pac. R. Co.*, 231 Ariz. 517, 519, ¶ 4 (App. 2013).

## VI.   US Bank Was Not Entitled to Recover Attorney's Fees under A.R.S. § 12-1103(B).

¶35     Steelman next challenges the trial court's attorney's fees award to US Bank under A.R.S. § 12-1103(B). Steelman argues US Bank could not recover fees because it held no interest in the title to the Myrmans' home. *See* A.R.S. § 12-1101(A). We agree.

¶36     A plaintiff pursuing a quiet title action must allege he holds title to the property. *Steinberger*, 234 Ariz. at 140, ¶ 65. US Bank did not allege or establish that it held any interest in the title to the Myrmans' home; it only alleged that it held "a valid deed of trust lien interest." Further, DSL Service Company, which is not a party to this lawsuit, held title under the Deed of Trust, not US Bank. *See Berryhill v. Moore*, 180 Ariz. 77, 88 (App. 1994) ("[T]he mortgagee has no title.").

¶37     US Bank argues that we can affirm the fee award under A.R.S. § 12-341.01(A), but it did not ask for fees under § 12-341.01(A) in the trial court. As a result, US Bank may not make a request pursuant to A.R.S. § 12-341.01(A) for the first time on appeal. *Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 476, ¶ 22 (App. 2014). We therefore vacate that portion of the judgment quieting title in US Bank's favor as well as the fee award to US Bank.

## VII.   Attorney's Fees on Appeal.

¶38     US Bank requests its attorney's fees incurred on appeal under A.R.S. §§ 12-1103 and 12-341.01(A). We have already determined that US Bank cannot recover attorney's fees under § 12-1103. However, we conclude that US Bank, as the prevailing party in this appeal, is entitled to an award of attorney's fees on appeal under § 12-341.01(A).

¶39     A prevailing party may recover attorney's fees under § 12-341.01(A) if a contract is the cause or origin of the dispute. *Keystone Floor & More, LLC v. Ariz. Registrar of Contractors*, 223 Ariz. 27, 30, ¶ 10 (App. 2009). At oral argument, counsel for Steelman conceded that US Bank's effort to foreclose on the subject property arises from contract. We agree. The Notice of Trustee's Sale is based on Steelman's breach of the Note, and is therefore based on a contract dispute.

**CONCLUSION**

**¶40** For the reasons set forth above, we vacate that portion of the judgment quieting title to the home in US Bank's favor and awarding attorney's fees to US Bank under A.R.S. § 12-1103. We affirm the remainder of the judgment. We will award US Bank its reasonable attorney's fees incurred on appeal, and both US Bank and First American their costs incurred on appeal, contingent upon their compliance with Arizona Rule of Civil Appellate Procedure 21. Additionally, it is ordered lifting the stay previously entered by this Court on June 2, 2015.



Ruth A. Willingham · Clerk of the Court
FILED: jt